## Brooks and Orme *versus* The Commonwealth.

1. A robbery was committed in a house, the owner being absent; he was sent for and informed, and, accompanied by another, without a warrant pursued those suspected.  They were told of the robbery, that they were suspected, and must return, and one of them was taken hold of; he told his companion to shoot both of the pursuers; he shot and one was killed.  The court was asked to charge that the pursuers, not being public officers, had no authority to arrest, the arrest was illegal, and the killing was not murder but manslaughter.  The court refused to charge.  *Held*, not to be error, as so to charge would have taken the whole case from the jury.

2. If the arrest had been illegal, it was still for the jury to determine whether the killing was without malice and arose from a sudden heat upon the arrest.

3. In manslaughter the law shows indulgence to men when justly pro-

[Brooks v. Commonwealth.]

voked and transported by passion, and therefore ungovernable and deaf to reason.

4. The cause which produces such frame of mind must be reasonable, and bear a just proportion to the effect.

5. If on a sudden provocation of a slight nature one beats another in a cruel and unusual manner, so that he dies, it is murder by express malice, though he did not intend to kill him.

6. On the commission of a felony, a private person making fresh pursuit on reliable information may arrest the felon.

7. Any private person, a fortiori a peace officer,—who is present when any felony is committed, is bound to arrest the felon, and may break open doors in following him.

8. If such pursuers kill the felon, provided he cannot otherwise be taken, it is justifiable; if *they* are killed in endeavoring to make the arrest, it is murder.

9. On probable suspicion a private person may arrest the felon or other person so suspected: but cannot break open a house or kill the suspected person : and the felony must be proved to justify the arrest.

10. Wakely v. Hart, 6 Binn. 318, remarked on.

11. A private person in making an arrest must give notice of his purpose to arrest for the felony.

March 16th 1869. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the Court of Oyer and Terminer of *Monroe county:* No. 357, to January Term 1869.

This was an indictment against Williams Brooks and Charles Orme for the murder of Theodore Brodhead. The indictment was found September 30th 1868, and the prisoners were tried December 28th 1868.

Thomas Brodhead, a brother of the deceased, was the keeper of an hotel in Dutotsburg, Monroe county. He testified that he came home between 11 and 12 o'clock in the forenoon of September 25th 1868, and was informed that his bar drawer had been robbed by two men; having obtained information of the direction in which they went, he followed them, and the deceased followed the witness. Seeing the men before him on the road, the deceased still following him, the witness hastened and overtook them : he said to them he wanted them to go back with him, some persons had robbed his bar, and they were supposed to be the men. Brooks said he was willing to go back; Orme refused to go. Witness then took hold of Orme's sleeve and told him he must go back too. They both stepped back a few steps toward the house. Brooks took something from his pocket and threw, as if trying to throw over the wall. Witness let go Orme's arm—the deceased being alongside of him—to pick up what Brooks had thrown from his pocket; he saw a new $2 note and some scrip. Before he had time to pick it up, the deceased said, "Don't you shoot." Witness looked up and saw Brooks pointing a pistol at the head of the deceased. Witness said, "You'd better not shoot." Brooks then turned the pistol on witness and shot him in the side. Brooks

11 P. F. SMITH—23

turned and shot the deceased. Orme said to Brooks, " Shoot them down, both of them, as soon as you can." Orme kept on saying this till the deceased fell. Witness made some steps across the road, turned and saw Orme with his pistol pointed toward his head; the pistol went off and grazed witness's forehead. Orme was about shooting again, when witness seized him and threw him partly down. Orme fired several shots, which missed, but the pistol struck witness in the face. Orme called for Brooks, who struck witness across the face with the pistol; witness was still holding Orme, when he said to Brooks with an oath, " Take a stone and knock his brains out as quick as you can." Brooks took a stone and beat him on the head a number of times. Witness then had to loose his hold, and he fell to the ground. When he fell, Brooks and Orme ran down the road. The ball went through some papers which witness had in his pocket, and "just broke the skin." His face was much cut, and there were five gashes on his head. After he got up he went to his brother and found him dead. Witness had nothing but his "naked hands;" did not attempt to hurt them. The deceased had no arms, and said nothing to them but, " Don't you shoot;" he did not touch them. The men were arrested by the sheriff about two hours afterwards.

Hannah M. Brodhead, the wife of Thomas Brodhead, testified that about 10½ o'clock on the day of the homicide, money was taken from the bar drawer, between $6 and $10; there was one $2 note pretty new, and the rest in scrip. Witness had gone into the bar-room; two strangers came in and got a drink; witness recognised the prisoners as the strangers; she left the room; returned in a short time and found that the money had been taken. She sent for her husband and the deceased, and told them that the money had been taken; the husband got into a carriage and went after the men. There was much more evidence in the case, both on the part of the Commonwealth and the prisoners, not important to give in detail.

The defendants submitted these points:

" 1. If the jury believe that the prisoners were in fear of great bodily harm or of loss of life, so imminent at the moment after the assault as to present no alternative of escaping the consequences but by resistance, the assault was justified.

" 2. If the jury believe that the minds of the prisoners were from intoxication deprived of power to form a design with premeditation and deliberation, the jury may find the defendants guilty of murder in the second degree.

" 3. Theodore Brodhead, the deceased, and Thomas Brodhead, not being public officers, but private citizens, had no authority to arrest the defendants; the arrest was illegal, and the killing of Theodore Brodhead was not murder, but manslaughter."

[Brooks v. Commonwealth.]

The court (Barrett, P. J.) affirmed the first two points, negatived the last, and further charged :—

"I have answered the last point put by defendants' counsel in the negative. I have affirmed and now affirm the right of a private citizen to arrest a felon, either in the act of committing the felony or afterwards while attempting to escape. This case may not depend upon the assertion of this right, and that will be a question for the jury. Under the evidence, Thomas Brodhead had not laid a hand upon Brooks, who did the shooting. He charged him with the felony, when Brooks volunteered to return with him and actually walked several steps on his way back. Orme declined. Brodhead caught him by the arm and told him he must go along, but Brodhead had released his hold upon him before the shooting commenced. Theodore Brodhead, who was killed, was not present at that time. He came up afterwards. He neither said a word nor did an act, if the testimony of Thomas Brodhead is believed. He did not charge the felony upon the defendants, nor did he make any attempt to arrest them. Brooks had evidently changed his mind and concluded not to return as Theodore approached. He first levelled his pistol at Theodore. Thomas called to him not to shoot. He changed his purpose—shot Thomas first and then shot Theodore. These acts were done at a time when he was not under restraint, and when no violence was offered to him. The killing would at least be unlawful if no felony had been committed.

"But that a larceny had been committed by the defendants within one hour, or very little more, previously, is alleged by the Commonwealth, and is sustained by circumstances and by the admissions of the defendants. If the jury are satisfied that these defendants were guilty of the felony charged against them, they are instructed that Thomas and Theodore Brodhead had the right to pursue and arrest them. The right of a private citizen to make an arrest, under such circumstances, cannot be doubted. [The law clothed them with ample authority, and afforded them the same protection, it would have extended to a public officer with a warrant in his hands."]

The jury found the defendants guilty of murder in the first degree, and on the 2d of January 1869 they were sentenced to be hanged.

The case was removed to the Supreme Court, and the defendants assigned for error: the refusal to affirm their 3d point, the part of the charge enclosed in brackets, and that the judge did not write out his charge and file it of record.

C. Burnett and Strong (with whom were J. B. Storm and D. S. Lee), for plaintiffs in error.—If a felony was committed in the presence of a private individual, and he be killed in attempting to arrest

[Brooks *v.* Commonwealth.]

the perpetrator, it was murder. But if the felony was not committed in his presence, and a private person proceeded to make an arrest, upon mere suspicion of guilt, and he be killed, it was manslaughter only: 4 Chitty's Cr. Law 17; 2 Hale's Pleas of Crown 82; 4 Black. Com. 293; 1 East P. C. 299. When a public officer in pursuance of legal process attempts to make an arrest and he is killed, it is murder. But in resisting irregular or defective warrants, &c., if the officer be killed, it is manslaughter: Roscoe's Crim. Ev. 708; 3 Greenleaf's Ev., § 123 and note; Bishop's Crim. Law, § 656.

*S. Holmes, Jr.*, District-Attorney, and *W. Davis*, for the Commonwealth.—There is no distinction between the *right* of a private person without warrant to arrest for a felony committed in his presence and on suspicion. If the felony be committed in his presence it is his duty to arrest, in the other case it is his right: 4 Black. Com. 293; 4 Chitty's Cr. L. 17; Russell *v.* Shuster, 8 W. & S. 308; Wakely *v.* Hart, 6 Binn. 316; Hawkins's P. C. B. 2, ch. 12, § 8–19; Comyn's Dig. *Imprisonment*, H. 4. When the party arrested or about to be arrested, kills the party arresting, and the party arrested has actually committed a felony, the killing is murder: 1 Arch. Cr. Pr. and Pl. 786, 788, 25, 26, 99, 101, 103, 853, 854, 856; 1 Russ. on Cr. 593; Wh. Cr. L. 470–475; 5 Cush. 281; Foster 318; Roscoe's Cr. Ev. 611, 612; Jackson's Case, 1 East P. C. 298; 1 Hawkins's P. C. 81, § 11; Rowan *v.* Swain, 5 Cush. 281.

The opinion of the court was delivered, March 25th 1869, by

AGNEW, J.—Thomas Brodhead kept the Brainerd House in Dutotsville, Monroe county. On the 25th of September last, returning home he was informed that his bar-drawer had been robbed by two men, who had left a very short time before. With his brother, Theodore Brodhead, he started in pursuit of the thieves and overtook them within a mile from home. When he came up he told them they must go back with him, that his bar had been robbed, and they were supposed to be the men. Brooks said he would go back, Orme refused. Thomas took Orme by the arm and told him he must go back too. Theodore Brodhead then came up. Brooks took money from his pocket and tried to throw it over a wall. A two-dollar bill fell near to Thomas, who let go of Orme to pick it up. While in the act, he heard Theodore cry out, "Don't you shoot." Looking up, he saw Brooks aiming a pistol at Theodore's head, and cried out, "You'd better not shoot." In an instant Brooks turned his pistol on Thomas and fired, and then wheeled upon Theodore and shot him down; Orme at this time crying out to Brooks, "Shoot them both down as soon as you can." Theodore was shot through the heart, and Thomas struck

[Brooks v. Commonwealth.]

in the side, the ball glancing from a bundle of papers in his pocket. Thomas, much hurt, attempted to escape, followed by Orme, who fired at him, the ball grazing his forehead. Thomas turned instantly, clasped Orme around the arms and a scuffle ensued, Orme firing several shots at him, which missed. Orme called to Brooks for help, telling him to take a stone and knock out Thomas's brains. Brooks first struck him several blows with his pistol, and then took up a stone and beat him over the head and face, cutting and gashing him severely. Finally overpowered Thomas sunk down, and the prisoners fled. They were followed, caught and identified. These are the bare facts, stripped of superfluous statement. Thus a felony was committed; the prisoners were the felons; fresh pursuit was made by the owner of the stolen money, on reliable information of the felony. The felons when overtaken were informed of the felony, that they were believed to be the perpetrators, and told they must return, before either was taken hold of, and one began immediately to rid himself of the stolen money. On this state of facts the prisoners' counsel asked the court to charge the jury that Theodore and Thomas Brodhead, not being public officers but private citizens, had no authority to arrest them; that the arrest was illegal, and the killing of Theodore was not murder but manslaughter. The court declined so to charge.

It is a sufficient answer to say that the point required the court to take the facts from the jury, and pronounce the crime manslaughter only. But if the arrest were illegal it does not follow that the crime was necessarily manslaughter. There remained still the question on the evidence whether the killing was without malice, and arose solely from a sudden heat and passion upon the illegal arrest. The killing was evidently not the result of anger and hot blood growing out of an unwarranted assault on the persons of the prisoners. It was prompted by wickedness of heart and a consciousness of guilt which determined the prisoners to escape even by the sacrifice of innocent lives. It was violent, heartless, cruel and unnecessary, the pursuers having done no violent or dangerous act, and showing no arms or intention to injure. The killing was evidently malicious—that is, the result of depravity of heart, and a cruel and wicked disposition. It was murder (whether of the first or second degree is not material to the present question) and it was not manslaughter. The indulgence which the law shows in cases of manslaughter is to the weakness of human nature, not its wickedness. It looks upon men as they are, the creatures of natural impulses, and when justly provoked and transported by passion, ungovernable and deaf to the voice of reason. But the cause which produces this frame of mind must be reasonable and bear a just proportion to the effect. Therefore, says Sir William Russell, in his work on Crimes, vol. i., p. 514, "the provocation which is allowed to ex-

[Brooks *v.* Commonwealth.]

tenuate in the case of homicide must be something which a man is conscious of; which he feels and resents at the instant the fact which he would extenuate is committed. All the circumstances must lead to the conclusion that the act done (though intentional of death or great bodily harm), was not the result of a cool deliberate judgment and previous malignity of heart, but solely imputable to human infirmity." Hence an illegal assault will not reduce the crime to manslaughter where the revenge is disproportionate and barbarous: Id. pp. 516–17. And if on any sudden provocation of a *slight* nature one beats another in a cruel and unusual manner, so that he dies, it is murder by express malice, though the other did not intend to kill him: Id. 517–18. He lays down this summary: "In all cases of *slight* provocation, if it may be reasonably collected from the weapon made use of, or from any other circumstances, that the party intended to kill or do some great bodily harm, such homicide will be murder:" Id. p. 520. See to the same effect Wharton's Am. C. L., § 971. The court, therefore, properly left this case to the jury upon the evidence, under competent instructions as to the nature and degrees of the crime of murder, and the nature of manslaughter.

But it is proper we should express our views upon the right of arrest. [That on the commission of a felony a private person making fresh pursuit on reliable information may arrest the felon, is the law not only of England, but of this state. The English law is thus stated in 4 Bl. Com. 293. ⌐Any private person (and *a fortiori* a peace officer), that is present when any felony is committed, is bound by the law to arrest the felon on pain of fine and imprisonment if he escapes through the negligence of the standersby.⌡ And they may justify breaking open the doors upon following such felon; and if they kill him, provided he cannot be otherwise taken, it is justifiable, though if they are killed in endeavoring to make such arrest, it is murder. Upon probable suspicion, also, a private person may arrest the felon or other person so suspected. But upon suspicion of felony only he cannot break open a house or kill the suspected person. To the same effect, see 1 Chit. Crim. L. 17; 1 Russell on Crimes 593. In New York, Chief Justice Savage stated the law thus:—"If a felony has in fact been committed by the person arrested, the arrest may be justified by any person without warrant, whether there is time to obtain one or not. If an innocent person is arrested upon suspicion by a private individual, such individual is excused if a felony was in fact committed, and there was reasonable ground to suspect the person arrested. But if no felony was committed by any one, and a private individual arrest without warrant, such arrest is illegal, though an officer would be justified if he acted upon information from another which he had reason to rely on:" Holly *v.* Mix, 3 Wend. 353.

[Brooks v. Commonwealth.]

In Pennsylvania the point was made in Wakely v. Hart, 6 Binn. 318, decided in 1814, that the common law had been altered by the constitution, which, in 7th sec. of the 9th article, declares "that the people shall be secure in their persons, houses, papers, and possessions, from unreasonable arrests; and that no warrant to search any place or seize any person or thing, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation." It was argued that no arrest is lawful without a warrant issued on probable cause, supported by oath. But it was held that this provision was to prevent the abuse of the warrant of arrest, by forbidding it from being issued without good cause, or in a vague and uncertain form, and Tilghman, C. J., proceeds to say: "It is nowhere said that there shall be no arrest without warrant. To have said so would have endangered the safety of society. The felon who is seen to commit murder or robbery must be arrested on the spot or suffered to escape. So, although not seen, yet if known to have committed a felony and pursued without warrant, he may be arrested by any person. And even when there is only probable cause of suspicion, a private person may without warrant, at his peril, make an arrest. I say at his peril, for nothing short of proving the felony will justify the arrest. These are principles of the common law essential to the welfare of society, and not intended to be altered or impaired by the constitution." To this it should be added, that a private person, in making an arrest, must give notice of his purpose to arrest for the felony. This is the settled law, and was recognised by Gibson, C. J., in Russell v. Shuster, 8 W. & S. 309; see also Commonwealth v. Deacon, 8 S. & R. 49.

It is argued that larceny is not such a felony as justifies arrest. The force of this distinction is not discernible. Though sometimes a light offence, it is often grave and important in its consequences. A loss which would be grievous to a poor man, and enlist all his energy in the pursuit, might scarcely be felt by one who is rich. To tell the former that his right to seize the felon and bring him to justice, and thus recover his property, depends on the amount in value, would only mock his earnestness and condemn the law.

It is also said that arrest by a private person is contrary to the genius of our institutions, and is the relic of a barbarous age. But the reverse is the case in a republic, where the people themselves represent its sovereignty and its security. The felon is an enemy to that sovereignty and security, forfeits his liberty, and cannot complain that the hand of his fellow-man arrests his flight and returns him to justice. What title has he to immunity from the law which he has violated, and to be permitted to escape its penalty because the officer of justice is not at hand to seize him? He has broken the bond of society; he has dealt a blow at its welfare and security, and he has placed himself in open hostility to all its

360 SUPREME COURT [*Philadelphia*]

[Brooks *v.* Commonwealth.]

faithful members, whose duty it becomes to bring him to justice.
We speak of the known felon. It is a misapplication, which applies
the guards of the constitution and the sacred principles of a just
and well regulated liberty to his case. The harmless citizen stands
upon a different footing, and a private person arresting him does
it at his peril, and if killed the crime is only manslaughter.
The distinction is founded in nature and its reason is clear.

An innocent man is unconscious of guilt, and may stand on his
own defence. When assailed under a pretence which is false his
natural passion rises, and he turns upon his assailant with indig-
nation and anger. To be arrested without cause is to the inno-
cent great provocation. If in the frenzy of passion he loses his
self-control and kills his assailant, the law so far regards his
infirmity that it acquits him of malicious homicide. But this is
not the condition of the felon. Conscious of his crime, he has no
just provocation—he knows his violation of law, and that duty
demands his capture. Then passion is wickedness, and resistance
is crime. Neither reason nor law accords to him that sense of
outrage which springs into a mind unconscious of offence, and
makes it stand in defence of personal liberty. On the contrary
fear settles upon his heart, and when he uplifts his hand, the act
is prompted by wicked hate and the fear of punishment. It has
been said by an authority much older than our law, that "the
wicked flee when no man pursueth." A sense of guilt cannot
arouse honest indignation in the breast, and therefore cannot
extenuate a cruel and wilful murder to manslaughter. We see no
error, therefore, in the answer of the court to the 3d point. Find-
ing no merit in the error assigned, we deem it unnecessary to pass
upon the question whether a bill of exception was necessary to be
sealed.

The sentence of the court is affirmed, and the record is remitted
for further proceeding according to law.

THOMPSON, C. J.—I fully concur in the reasons of my brother
Agnew for affirming the judgment in the court below on the very
points presented and argued. To that portion relating to private
arrests I am not prepared to assent, nor yet fully to dissent, but
I concur in the result determined on.