## 1613

The STATE, Respondent v. Emmett Ray NALL, Appellant. The STATE, Respondent v. Anthony Wayne NALL, Appellant.

(404 S.E. (2d) 202)

Court of Appeals

*Assistant Appellate Defender Tara Dawn Shurling for appellant Emmett Ray Nall,* and *Assistant Appellate Defender Daniel T. Stacey for appellant Anthony Wayne Nall,* both of the *South Carolina Office of Appellate Defense,* Columbia.

*Attorney General T. Travis Medlock, Asst. Atty. Gen., Harold M. Coombs, Jr.,* Columbia, and *Sol. Holman C. Gossett, Jr.,* Spartanburg, *for respondent.*

Heard Oct. 18, 1990.

Decided Feb. 25, 1991.

BELL, Judge:

At the January, 1989, term of General Sessions for Cherokee County, Emmett Ray Nall was indicted with his brother,

Anthony Wayne Nall, on ten counts of breaking into a motor vehicle, one count of grand larceny, one count of malicious destruction of personal property, and one count of assault and battery with intent to kill. The Nalls were tried together before a jury. At the close of the State's case, the trial judge granted the Nalls a directed verdict of acquittal on eight counts of breaking into a motor vehicle. The judge also reduced the charge of assault and battery with intent to kill to assault and battery of a high and aggravated nature. The jury ultimately found the Nalls guilty of two counts of breaking into a motor vehicle, grand larceny, malicious destruction of personal property, and assault and battery of a high and aggravated nature. From their convictions on these charges they appeal. We affirm in part and reverse in part.

Viewed in the light most favorable to the State, the evidence establishes the following facts.

On the night of October 25-26, 1988, a series of automobile break-ins took place in the vicinity of Trenton Road in the York Hills subdivision of Gaffney, South Carolina. Among other incidents, the front door window of Tony Miller's car was smashed and his $370 Olympia camera was stolen. Miller lived one block from Trenton Road. A truck owned by Gary Lovelace also was entered and an inexpensive sheath knife was taken from the glove compartment. Lovelace lived on Trenton Road. Finally, the convertible top of Lee Ann Moore's car was cut and some of her insurance papers were strewn across her back yard leading toward Trenton Road. Lee Ann discovered what had happened at about 1:20 a.m. She immediately woke her father and reported the matter to him. He dressed, told his wife to call the police, and ran out the door.

Mr. Moore followed the trail of his daughter's papers across the back yard to Trenton Road. The street was well lighted. As he entered it, Moore saw no one in either direction. After running several hundred feet he slowed to a walk. About the same time, he saw the Nall brothers suddenly emerge from the right onto Trenton Road some distance ahead of him. He could not tell whether they had come from the adjacent yard or from a car or a truck parked on the street near the yard. When Mr. Moore came within seventy-five feet of the two, he crossed the street and approached them. Seeing they were strangers in the neighborhood and suspecting they were the

culprits he was seeking, he asked them first for a light and then for the time in an effort to delay them. After that, Moore said nothing.

Sensing the two were about to leave the scene, Moore grabbed Emmett Nall to detain him until the police arrived. The two of them fell to the street. Wayne Nall, who had run away, came back and began kicking and beating Moore until he let Emmett go. The Nalls then fled through a yard and over a fence. When Moore got up, he discovered a Harley-Davidson cap, a flashlight, and Gary Lovelace's knife in the street. In the struggle with the Nalls, Moore suffered minor kidney damage, bruises on his arm and shoulder, and pain in his back and side. He was temporarily hospitalized for these injuries.

Soon after the struggle, the police arrived at the scene. They discovered that several cars in the general vicinity had been broken into. They also discovered a cache of stolen goods, including Tony Miller's Olympia camera, hidden in some bushes at the end of a dirt road leading to a neighborhood street. The police estimated from the size of the cache that it equaled as many as four loads carried by each of two people. They discovered a car, later identified as registered to the Nalls' mother, parked near the cache on the same dirt road.

The appeals present three questions for our review: (1) Were the Nalls entitled to a directed verdict of acquittal on all charges because the State's evidence was not substantial enough to raise more than a "mere suspicion" of guilt? (2) Did the trial judge err in denying the Nalls' request for a jury charge that notice is an essential element of a lawful citizen's arrest? (3) Did the trial judge err in denying the Nalls' request for a jury charge on simple assault and battery?

## I.

At the close of the State's evidence, the Nalls moved for a directed verdict of acquittal on the ground that there was no substantial evidence to prove each element of the crimes charged beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. (2d) 560 (1979). The court denied the motion.

> Upon a motion for a directed verdict of acquittal, the trial judge must view the evidence in the light most favorable to the State. *Kimbrell v. Bi-Lo, Inc.,* 248 S.C.

365, 150 S.E. (2d) 79 (1966). The judge must submit the case to the jury if there is any evidence, direct or circumstantial, which reasonably tends to prove the guilt of the accused or from which his guilt may be fairly and logically deduced. *State v. Williams,* 400 S.E. (2d) 131 (S.C. 1991) (Davis Adv. Sh. No. 1 at 3); *State v. Peake,* — S.C. —, 396 S.E. (2d) 362 (1990); *State v. Stokes,* 299 S.C. 483, 386 S.E. (2d) 241 (1989); *State v. Edwards,* 298 S.C. 272, 379 S.E. (2d) 888, *cert. denied,* — U.S. —, 110 S. Ct. 246, 107 L. Ed. (2d) 196 (1989); *State v. Littlejohn,* 228 S.C. 324, 89 S.E. (2d) 924 (1955). The State need not produce evidence that excludes every hypothesis other than the guilt of the accused. *Jackson v. Virginia,* 443 U.S. at 319, 99 S. Ct. at 2789; *State v. Stokes,* 299 S.C. at 484, 386 S.E. (2d) at 241. The evidence is sufficient to go to the jury if, viewed in the light most favorable to the State, a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. at 319, 99 S. Ct. at 2789. When ruling on the motion, the trial court considers only the existence of evidence, not its weight. *State v. Williams, supra; State v. Mathis,* 287 S.C. 589, 340 S.E. (2d) 538 (1986).

On the other hand, evidence that raises no more than a suspicion of guilt is inadequate to go to the jury and requires the court to direct a verdict of acquittal. *State v. Woods,* 273 S.C. 266, 255 S.E. (2d) 680 (1979); *State v. Hyder,* 242 S.C. 372, 131 S.E. (2d) 96 (1963).

Except on the assault charge, we conclude the State's evidence was sufficient to create questions of fact for the jury. The Nalls were present in a strange neighborhood in the middle of the night. A series of vehicles had been entered and a number of items stolen near the time and place they were apprehended by Mr. Moore. One of the stolen items, Lovelace's knife, was in the Nalls' possession when Moore detained them. The knife strongly linked both Nalls to the thefts. It also created a reasonable inference that the Nalls used it to slash the convertible top of the Moore automobile. The jury could also reasonably infer that the Nalls used the flashlight Moore found with the knife to aid in committing the nighttime break-ins and thefts. A car traced to the Nalls' mother was parked near a cache of stolen goods, including the stolen camera. The car had been backed down a dirt side road where it was not readily visible from the street. The Nalls' ex-

planation for its presence near the cache was that the car had broken down and the brothers were going for help. However, one month later when their mother went to claim the car from the wrecker service that towed it, the car started and she drove it away.

These facts were sufficient to permit a fair minded jury to infer the Nalls' guilt beyond a reasonable doubt. They were not such that the only inference to be drawn was that the State's evidence raised a "mere suspicion" against them. Accordingly, we affirm the trial judge's refusal to grant the Nalls' motion for a directed verdict of acquittal on the charges of breaking into a motor vehicle, grand larceny, and malicious destruction of property.

## II.

In prosecuting the charge of assault and battery of a high and aggravated nature, the State proceeded on the theory that Mr. Moore made a valid citizen's arrest which the Nalls forcibly resisted. The Nalls argued that Moore, far from making a lawful arrest, attacked Emmett without provocation. They contend they defended themselves against Moore using only the force necessary to free Emmett, then immediately retreated to avoid any further altercation.

At trial the Nalls moved for a directed verdict of acquittal on the assault charge on the ground that the State's evidence did not prove the elements of a lawful citizen's arrest. They also requested the court to charge the jury that notice to the suspect is an essential element of a lawful citizen's arrest. The court denied both motions.

## A.

From the earliest times, the English common law placed a duty on every person who encountered another in the commission of a felony to apprehend him or to make outcry calling the community to pursue and take him.[1] This duty has re-

---

[1] *See, e.g.,* Dooms of Canute, c. 29 (1020): "And if anyone encounters a thief and wilfully lets him go without making outcry, he shall pay the theif's wergeld as compensation, or shall clear himself by a full oath, that he did not know [whom he let go] to be guilty of anything. And if any one hears the outcry and neglects it, he shall pay the king's *oferhyrnesse* or clear himself by a full oath." C. Stephenson and F. Marcham, SOURCES OF ENGLISH CONSTITUTIONAL HISTORY, 23-24 (1937). (The *oferhyrnesse* was a special

mained an important feature of Anglo-American law into modern times. Under the modern common law, any person who views a felony being committed has a duty to endeavor to arrest the felon either personally or by calling others to his aid or by seeking out an officer of the peace.[2]

The law also permits a private person to arrest for a felony not committed in his presence if (1) the felony was actually committed and (2) the private person has reasonable cause to believe the one he is arresting committed the felony for which the arrest is made.[3] Both requirements must be met. If it later appears that the felony for which arrest has been made was not in fact committed, the arrest is unlawful.[4] Likewise, if there was no reason in fact to believe

---

fine of 120 shillings for violation of a royal command.) *Id.*, 10, n. 4. At the time of Canute, the institution of private arrest was already centuries old in England. *See* Laws of Ine, 36 (circa 690 A.D.), in W. Stubbs, SELECT CHARTERS AND OTHER ILLUSTRATIONS OF ENGLISH CONSTITUTIONAL HISTORY, 68 (9th ed. 1913); Ordinance of the Hundred, c. 2, (959 A.D.) *Id.*, 81. Private arrest is also a feature of other ancient legal systems. For example, the Code of Hammurabi (circa 2150 B.C.) made citizens of the locality where a homicide or theft was committed liable for compensation if they failed to apprehend the offender. *See* C. Edwards, THE HAMMURABI CODE, secs. 23-24, at 31, and comment, at 94 (1971).

[2] *See Regina v. Price* (1838) 8 Car. & P. 282, 173 Eng. Rep. 496; *Barth v. Heider* (1868) 6 D.C. 312, 314; *Kindred v. Stitt*, 51 Ill. 401 (1869); *State v. Sutter*, 71 W. Va. 371, 76 S.E. 811 (1912) (dictum); 1 M. Hale, HISTORIA PLACITORIUM CORONAE, 587-88 (1736); 4 Bl. Comm., Ch. 21, 289-91 (1769); 1 C. Alexander, THE LAW OF ARREST IN CRIMINAL AND OTHER PROCEEDINGS, 438 (1949); Wilgus, *Arrest Without Warrant*, 22 MICH. L. REV. 541, 560 (1922).

[3] *See Beckwith v. Philby* (1827) 6 Barn. & C. 635, 108 Eng. Rep. 230; *Walters v. W.H. Smith & Son, Ltd.* (1914) 1 K.B. 595; *State v. Anderson*, 19 S.C.L. (1 Hill) 327 (1833); *State v. Griffin*, 74 S.C. 412, 54 S.E. 603 (1906); *Barth v. Heider, supra*, 315; *Brooks v. Commonwealth*, 61 Pa. 352, 358 (1869).

[4] *Samuel v. Payne* (1780) 1 Dougl. K.B. 359, 99 Eng. Rep. 230; *Barth v. Heider, supra*, 315; *Brooks v. Commonwealth, supra*, 358. The common law is different for peace officers. They are authorized to arrest upon probable cause that a felony has been committed, even if it has not. *See Samuel v. Payne, supra; Beckwith v. Philby, supra; Bushardt v. United Investment Co.*, 121 S.C. 324, 113 S.E. 637, 35 A.L.R. 637 (1922). Arrest by a private person following the hue and cry was likewise valid even though no felony had been committed. This exception flowed from the premise that the hue and cry created probable cause that a felony had been committed. Thus, any person under a duty to follow the hue and cry could make the arrest without personally knowing whether a felony had in fact taken place. *See* M. Dalton, THE COUNTREY JUSTICE, 308 (1622); M. Hale, PLEAS OF THE CROWN: A METHODICAL SUMMARY, 91 (1678).

the person arrested committed the felony, the arrest is unlawful.[5] On the other hand, if the felony was committed, but it later appears the person arrested did not commit it, the arrest is still lawful if there was reasonable cause to suspect him.[6]

Finally, the law permits a private person to arrest for a misdemeanor committed in his presence, if it constitutes a breach of the peace.[7] A private person has no lawful authority to arrest for misdemeanors not committed in his presence.[8]

Except when made upon view of the felony, a private person making an arrest must give reasonable notice of his purpose to arrest and the cause for the arrest, together with a demand that the suspect submit to arrest.[9] No particular form of words must be used. What constitutes a reasonable notice depends on the circumstances of each case.

Once notice is given, it is the duty of the suspect to submit peaceably to the arrest without resistance or disturbance of the peace.[10] If after notice of arrest, the suspect attempts to flee or forcibly to resist arrest, the person making the arrest may use reasonable means to effect it.[11] On the other hand, if the person making the arrest fails to make known his purpose, he may be treated as a trespasser.[12]

---

[5] Ashley's Case (1611) 12 Rep. *90, 77 Eng. Rep. 1366; *Ledwith v. Catchpole,* (1783) Cald. 291 (per Buller, J.); *Barth v. Heider, supra,* 315; *Brooks v. Commonwealth, supra,* 358; 2 Hale, P.C., *supra,* 78, 81; Hall, *Legal and Social Aspects of Arrest Without Warrant,* 49 HARV. L. REV. 566, 569 (1936).

[6] Hale, SUMMARY, *supra,* 91: "If a Felony in fact be committed, and a private person suspect another upon probable cause, he may be arrested, though in truth innocent."

[7] *See Price v. Seely* (1843) 10 Cl. & Fin. 28, 8 Eng. Rep. 651; *Timothy v. Simpson* (1835) 1 Cr. M. & R. 757, 149 Eng. Rep. 1285; 2 Hawk. P.C., c. 12, s. 20, at 120 (8th ed. 1824).

[8] *See Fox v. Gaunt* (1832) 3 B. & Ad. 798, 110 Eng. Rep. 293; *Barth v. Heider, supra,* 314.

[9] *Brooks v. Commonwealth, supra,* 359; *State v. Bryant,* 65 N.C. 327 (1871); 2 Hale, P.C., *supra,* 82; Alexander, LAW OF ARREST, *supra,* sec. 93, at 479; Wilgus, *Arrest, supra,* 557.

[10] *State v. Griffin, supra;* Alexander, LAW OF ARREST, *supra,* 480.

[11] Alexander, LAW OF ARREST, *supra,* 481; *see also State v. Griffin, supra; State v. Bryant, supra.*

[12] *State v. Bryant, supra.*

## B.

The English common law of private arrest was received as the common law of South Carolina in 1712 and remained essentially unchanged until 1865.[13] In that year, the General Assembly passed a statute that is now codified as Section 17-13-10, Code of Laws of South Carolina, 1976.[14] The statute provides:

> Upon (a) view of a felony committed, (b) certain information that a felony has been committed or (c) view of a larceny committed, any person may arrest the felon or thief and take him to a judge or magistrate, to be dealt with according to law.[15]

Subsection (b) changed the common law rule that a citizen's arrest was unlawful if no felony had been committed. *State v. Griffin, supra.* Under this provision a private person is authorized to arrest upon information that a felony has been committed. *Id.*[16] An arrest upon "certain information," is lawful even though no felony has been committed. *Burton v. McNeill,* 196 S.C. 250, 13 S.E. (2d) 10 (1941). "Certain information" is that which is positive, credible, reliable, and trustworthy. *Id.* The statute does not change the common law requirement that the person making the arrest must have reasonable cause to believe the person he is arresting is the culprit.

---

[13] In 1712 the General Assembly enacted a reception statute declaring the common law of England to be the law of South Carolina. *See* 2 Stat. at Large of South Carolina 401, 413-14 (Cooper ed. 1837). The common law of England ordinarily is presumed to govern if there is no South Carolina authority to the contrary. *State ex rel. McLeod v. Sloan Construction Co.,* 284 S.C. 491, 328 S.E. (2d) 84 (Ct. App. 1985).

[14] *See An Act to Amend the Criminal Law,* sec. XXXI, 13 Stat. at Large of South Carolina 253 (1865).

[15] Subsection (c) was added in 1898. *See An Act to Amend Section 1 of the Criminal Statutes of South Carolina,* 22 Stat. at Large of South Carolina 809 (1898). It is declaratory of the common law, since at common law grand larceny is a felony and petty larceny is a breach of the peace.

[16] The statutory rule is similar to the common law rule that an arrest made upon the hue and cry was valid even if no felony had been committed. The hue and cry constituted probable cause *per se* and those responding to it were protected from the rigor of the normal rule that the felony must actually have been committed for the arrest to be lawful. *See* Dalton, COUNTREY JUSTICE, *supra,* 308-09; 2 Hale, P.C., *supra,* 81.

## C.

In this case, the State's evidence failed to establish a lawful citizen's arrest for two reasons. First, Mr. Moore arrested Emmett Nall on information from his daughter, not upon viewing the crime being committed. In order, therefore, for his arrest to be lawful the crime had to be a felony. As it was, the crime for which he arrested Nall—cutting the canvas top of his daughter's automobile—was a misdemeanor. *See* S.C. Code Ann. §§ 16-1-10 to -20 (1976 & Supp. 1990). Mr. Moore had no lawful authority to arrest for a misdemeanor not committed in his presence. He is supposed to have acted with a knowledge of the law on this point. *See State v. Griffin, supra.*[17] Second, Mr. Moore effected the arrest by grabbing Nall without any prior warning. In other words, he failed to give notice that he was making a citizen's arrest. As a result, the arrest was not lawful.[18]

Accordingly, the trial judge committed error when he refused to direct a verdict for the Nalls on the charge of assault and battery of a high and aggravated nature. We reverse the judgment on this charge.

## D.

In light of our reversal on the charge of assault and battery of a high and aggravated nature, we need not reach the question of the requested jury charges.

Affirmed in part, reversed in part.

SHAW and CURETON, JJ., concur.

---

[17] Mr. Moore may well agree with Mr. Bumble: "If the law supposes that, the law is a ass, a idiot." C. Dickens, THE ADVENTURES OF OLIVER TWIST, 197 (1837-38 ed.). The State's attorney, however, should have known better when it charged the Nalls with assault and battery with intent to kill on the theory that Moore made a lawful arrest.

[18] Our holding that the arrest was unlawful does not imply any moral criticism of Mr. Moore. One might easily conclude that a citizen who arose in the middle of the night and left the safety of his home, unarmed, to apprehend a criminal who could reasonably be presumed to be armed with a deadly weapon acted with unusual courage and civic spirit.