## LOGGINS v. SOUTHERN RY.

ARRESTS—BREACH OF THE PEACE—WARRANT.—A CONDUCTOR has the right to arrest without warrant and detain until he can turn him over to the proper authorities, a passenger on his train at the time acting orderly, but who before in the presence of the conductor acted disorderly and boisterous, and after being put off threw rocks at the conductor and the cars in his presence, such acts being breaches of the peace committed in presence of the conductor.

21—64

Before TOWNSEND, J., Anderson, October term, 1901.
Reversed.

Action by James Loggins against Southern Ry.    From
judgment for plaintiff, defendant appeals.

*Mr. T. P. Cothran,* for appellant, cites: *As to powers of
conductors to make arrests:* 22 Stat., 776; 2 N. & McC., 475;
17 S. C., 58; 16 S. C., 486; Crim. Code, 1718; Townsend's
Code, 2174.

*Messrs. E. G. McAdams* and *Tribble & Prince,* contra,
cite: *Power of conductor to arrest without warrant is con-
fined to time during which breach of the peace is being com-
mitted:* Rev. Stat., 1717, 1718; 2 Black (Cooley ed.), book
4, 292, 1 Id., 355.

June 25, 1902.    The opinion of the Court was delivered
by

MR. JUSTICE POPE.    Briefly stated, the action instituted
by the plaintiff sought to make the defendant responsible in
$2.000 for the alleged unlawful arrest and imprisonment of
the plaintiff, on the 10th day of November, 1900, on the
defendant's passenger coaches, while such coaches were
transporting passengers for hire between the stations on said
railway at Seneca, S. C., and Richland, S. C., through the
conductor of said train, who "wantonly, wickedly and with-
out just cause assaulted plaintiff, and with force and intimi-
dation restrained plaintiff of his liberty."    The answer of
the defendant justified the conduct of its conductor in arrest-
ing the plaintiff while in its passenger coaches, alleging that
the plaintiff, "while under the influence of liquor, behaved in
a most outrageous and boisterous manner, shouting and
cursing in the presence of ladies and other passengers; that
the conductor approached plaintiff and warned him to desist,
but he cursed and shouted all the more, when the conductor
as in duty bound stopped the train and put him off."    The
cause came on for trial before his Honor, Judge Townsend,

and a jury in October, 1901.   The verdict was for plaintiff for the sum of $100.   After judgment was entered up, the defendant appealed on the following grounds:

"I.  The presiding Judge erred in charging the jury as follows: 'In the argument there was something said about rocks, assaulting the conductor; if you were to find that the plaintiff was put off of the train under the charge of disorderly conduct, and he assaulted the conductor outside of his train, the conductor did not have the common law powers to arrest him outside of the train; and if the conductor went back in his train, the conductor would not have the right to arrest him for that rock-throwing out there, if he were quiet and peaceable; but if he went back in the train and the conductor had a reasonable apprehension that he was about to commit a breach of the peace again, then he would have the right to take him into custody and detain him until he could turn him over to a magistrate or the proper officer of the law.'   The error consisting in this: The act of 1898 (XXII. Stat., 776,) gives to a conductor on board his train the common law powers of a constable to make arrests; by the common law, constables had authority to arrest without a warrant those who were engaged in an affray or a breach of the peace committed in their presence.   If, therefore, the plaintiff assaulted the conductor, the former being on the ground and the latter on the platform, as the testimony tended to show, the conductor had the right without warrant to arrest the plaintiff, either while the latter was on the ground or after he boarded the train, whether he were at that time peaceable and quiet or not.

"II.  The testimony tended to show that the plaintiff was put off the train for disorderly conduct; while on the ground, as the train moved off, he threw rocks at the train and struck the conductor, the latter standing on the platform; the train was stopped for the purpose of apprehending the plaintiff; the plaintiff again boarded the train and was arrested by the conductor while seated in the car.   Under these circumstances, the conductor had the right without warrant to

arrest the plaintiff, and the Circuit Judge erred in charging to the contrary.

"III. The presiding Judge erred in refusing the defendant's fourth request to charge, as follows: 'If the jury believe from the evidence that the plaintiff committed an assault upon the conductor, or that he injured a railroad car in the conductor's presence, the latter had a right to arrest him without warrant.' The said request containing a sound proposition of law applicable to the case. If the assault were committed upon the conductor, it was a breach of the peace in his view; if he threw rocks at and injured the car, it was also a breach of the peace under XXII. Stat., 777, for either of which the conductor could arrest without warrant.

"IV. The presiding Judge erred in the following: Defendant's attorney stated, 'I think the Court has indicated that he (plaintiff) could not be arrested for throwing rocks, for making the assault upon the conductor.' The Court replied: 'Yes, sir, I charged that. He would have to have a warrant to arrest him for assault, if he got back on the train and was quiet, and was not committing a breach of the peace, nor was about to commit a breach of the peace.' The error being the same as specified in exception I.

"V. The presiding Judge erred in refusing the defendant's first request to charge, as follows: 'If the jury believe from the evidence that plaintiff was in a grossly intoxicated condition upon defendant's train, on November 10, 1900, and conducted himself in a disorderly manner, or that he used obscene or profane language accompanied with disorderly conduct, at such time and place, in view of the conductor of said train, the latter had the right without warrant to arrest him and have him turned over to a magistrate or other proper authorities for trial as soon as practicable.' Such conduct constituted an offense for which, under the circumstances, the conductor could arrest without warrant.

"VI. The presiding Judge erred in not charging the defendant's second request to charge, which was as follows: 'If the jury believe from the evidence that the plaintiff was

guilty of disorderly conduct to the terror of passengers upon
defendant's train, on November 10, 1900, the conductor of
said train had the right without warrant to arrest him and
have him turned over to the proper authorities for trial as
soon as possible.' Under sec. 26 of the Criminal Code, such
conduct was a breach of the peace for which the plaintiff
was liable, and for which the conductor had the authority to
arrest without warrant.

"VII. The presiding Judge erred in charging plaintiff's
tenth request, which was as follows: 'That under sec. 1718,
General Statutes, conductors are authorized to eject passen-
gers who shall be guilty of disorderly conduct, or for using
any obscene or grossly profane language to the annoyance of
passengers, and if the jury find from the evidence that the
conductor undertook and did arrest plaintiff and deprive him
of his liberty, and have him incarcerated without warrant,
the defendant company is liable for damages.' Thus with-
drawing from the consideration of the jury the right of the
conductor to arrest the plaintiff without warrant for a breach
of the peace committed in his view.

"VIII. The presiding Judge erred in modifying the de-
fendant's fifth request to charge, which was as follows: 'If
the jury believe from the evidence that the conductor right-
fully expelled the plaintiff from the train, and that he wil-
fully returned to the train, he was then violating the law and
was subject to arrest without a warrant.' The modification
was: 'I charge you that, with the addition of these words:
"provided, that such violation of law was a breach of the
peace, or tended to a breach of the peace, or gave the con-
ductor at the time the arrest was made reasonable apprehen-
sion that the peace was about to be broken.'" The error
consisted in this: The law which authorized the conductor
to eject a disorderly passenger implies the right to keep him
off; his act in wilfully boarding the train again after his
ejection, as matter of law, is a breach of the peace, subject-
ing him to arrest for disorderly conduct.

"IX. The presiding Judge erred in charging the jury that

if after his ejection the plaintiff boarded the train again without permission, he could not be arrested without a warrant, if he was at that time quiet and well behaved. For the reasons stated in the preceding exception, and for the further reason that such rule if declared to be the law, would neutralize the effect of the statute allowing the conductor to eject disorderly passengers."

The laws of this commonwealth subject railway companies to a high degree of responsibility in the protection of the persons of passengers; this responsibility does not cease in the protection of the persons of passengers, it extends likewise to their freedom from blackguardism from other passengers. Ruffians are not to be allowed on the trains to use blasphemous language and act disorderly in the presence of passengers. This being true as to the measure of the responsibility of railway companies to their passengers, it is nothing but right and proper to expect that the legislature of this State will clothe railway companies with power to enforce good behavior in their trains. An examination of our statutory laws will show that this has been done. The compilation of the Civil Statutes by Mr. Townsend states the law thus, in sections 2173 and 2174: "Sec. 2173. Conductors of railroad trains and station or depot agents are hereby declared to be conservators of the peace, and they and each of them shall have the common law power of constables to make arrests, except that the conductors shall only have such power on board of their respective trains and the agents at their respective places of business; and said conductors and agents may cause any person or persons so arrested by them to be detained and delivered to the proper authorities for trial as soon as practicable.

"Sec. 2174. When any passenger shall be guilty of disorderly conduct, or use any obscene or grossly profane language, to the annoyance and vexation of passengers, or play any game of cards or other game of chance for money or other valuable thing upon any railroad train, the conductor of such train is hereby authorized to stop his train at any

place where such offense has been committed and eject such passenger from the train, using only such force as may be necessary to accomplish such removal, and may command the assistance of the employees of the railroad company or any of the passengers to assist in such removal."

The act of 1898, XXII. Stat., 776, also provides: "Whoever wilfully discharges any kind of firearms or throws any kind of missile at or into the engine or any car of a train, shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not more than, etc." The Circuit Judge in his charge recognized the foregoing statutes of the State, but it is suggested by the appellant that he narrowed the provisions of the law when he required that the plaintiff, after being guilty of cursing and other disorderly conduct on the train, and was ejected by the conductor therefor from the train, and while the ejected passenger was on the ground and while the conductor was on the platform of the car, struck the conductor by throwing a rock against him, and also rocked the train itself, could not be arrested therefor by the conductor without a warrant for his arrest. We cannot agree with the Circuit Judge. The plaintiff was not arrested until after, as a traspasser, he reappeared upon the train after his ejection therefrom by the conductor. The plaintiff was in flagrant violation of the law from the beginning of his conduct in the passenger coach until his arrest. He resisted his ejection from the car, he threw rocks at the conductor and at the passenger coach, he re-entered the car after his ejection by the conductor. · There was no moment of all that time that he was not liable under the law to being arrested without a warrant by the conductor. Why, if a bystander were to throw rocks against a passenger coach in the presence of the conductor, under the law, such bystander could be arrested by the conductor without a warrant. By the terms of the act of 1898, which has become sections 2173 and 2174 of our civil statutes, the conductor is clothed with all the powers of constables under the common law to make arrests. That power under the common law to make arrests

has received judicial construction in our Courts when it has been held as follows: "From time immemorial, constables and watchmen had authority without warrant to arrest those whom they saw engaged in an affray or breach of the peace, and to detain them until they should find proper securities." *City Council* v. *Payne,* 2 Nott & McC., 475; approved in *State* v. *Bowen,* 17 S. C., 58; *State* v. *Sims,* 16 S. C., 486. The law is above us all. We sustain this first exception.

As to the *second exception,* we may remark that it is controlled by our observations on the first exception, and it is sustained.

The *third exception* is governed by our previous rulings, and is sustained.

The *fourth exception* is likewise sustained, for the same reasons.

The Circuit Judge erred in not sustaining as sound law the first request of defendant, as set out in the fifth exception. No warrant was necessary to enable a conductor to arrest a person who was guilty of such conduct as is pointed out in the request. It is governed by sections 2173 and 2174 of our statutes. The fifth exception is sustained.

We also sustain exception 6. Very clearly, the law justifies an arrest without warrant in the case suggested in the exception.

Exception 7 is well founded. It was error for the Circuit Judge to charge the plaintiff's tenth request. The laws of our State, as we have already shown, authorize a conductor to eject a passenger who is guilty of the bad act indicated. There was no arrest made for such conduct. The plaintiff was arrested for a breach of the peace in the presence of the conductor. The charge should not have been made in the form it was.

As to the *eighth exception and the ninth exception,* we will consider them together. We cannot see how, after a breach of the law in the presence of a peace officer has been committed, the sudden return to good behavior by a passenger should deprive the conductor, who is acting as a consta-

ble under the common law, of the right to arrest without a warrant. *It is the offense that will be punished.* Proof that after a man has already completed the commission of an offense he suddenly returns to good behavior, is at best only a mitigation of the offense. These exceptions are sustained.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the action be recommitted t  that Court for a new trial.

MR. JUSTICE JONES *concurs in the result.*