STATE v. DAVIS.

1. CHARGE—REASONABLE DOUBT—ARREST.—When a Judge, in defining a reasonable doubt, says, "Under the facts and evidence as strong as that in this case, that would' be a reasonable doubt," he expresses an opinion as to the weight of the testimony; and when he says, "In this case the question of the right to make an arrest cannot arise," he gives an expression of his opinion as to the weight of the testimony.

2. CHARGE—MANSLAUGHTER.—A Judge cannot instruct the jury that manslaughter from the accidental but negligent killing of a human being cannot arise in a case.

3. ARREST—SELF-DEFENSE.—A person has the same right to resist an unlawful arrest as he has to resist a threatened injury to life or body.

Before KLUGH, J., Fairfield, February, 1898.    Reversed.

Indictment *v*. Henry Davis, charged with murder of James E. Suber. From judgment against defendant, he appeals.

*Mr. J. E. McDonald* and *Jas. W. Hanahan*, for appellant, cite: *Charge on the facts:* 47 S. C., 518; 49 S. C., 285, 496, 556; 51 S. C., 453. *The Court excluded the consideration of manslaughter in resisting an unlawful arrest, by limiting the jury to manslaughter in sudden heat and passion:* 50 S. C., 427; 29 S. C., 34. *Right to resist an unlawful arrest:* 2 Hous., 604; 1 Hill, 212; 9 S. C., 309; 40 S. C., 509; 50 S. C., 427.

*Solicitor J. K. Henry*, contra, cites: *Court shall charge law applicable, not abstract propositions:* 49 S. C., 303; 47 S. C., 522. *Provocation in manslaughter:* 2 Hill, 285.

Sept. 7, 1898. The opinion of the Court was delivered by

MR. JUSTICE POPE. This is the second time this case has been before this Court on appeal. It seems that the appellant was again convicted of the murder of James E. Suber by a jury in Fairfield County. The grounds of appeal allege that the Circuit Judge in his charge to the jury

commented on the facts, in violation of that provision of the Constitution which interdicts such a course. By the brief it appears that the Circuit Judge used this language:

1    "Now in considering this whole case, Mr. Foreman and gentlemen, if you have a reasonable doubt of the guilt of the accused, if you have a doubt in considering the testimony, which is well founded—a doubt such as a reasonable and prudent man would entertain in affairs of his own concern—*under the facts and evidence as strong as that in this case, that would be a reasonable doubt,*" *&c.* (italics ours). And also in his charge he said: "In this case the question of the right to make an arrest cannot arise." As to the first quotation, it is very evident that the Circuit Judge was betrayed into an expression of his opinion upon the weight of the testimony. So, also, in the second quotation, it appears that the Circuit Judge unintentionally stated what was his inference from the testimony which had been offered. Such a course as to either of the questions, was not open to the Judge. By the Constitution he was debarred this privilege, and both instances present reversible error. This disposes of the second and fourth grounds of appeal.

Another question is as to the power of the Circuit Judge in his charge to limit the inquiry of the jury in the application of the facts to the crime of manslaughter, by

2    declaring that manslaughter from the accidental but negligent killing of a human creature, could not arise in this case. This was error. It is but due to the Circuit Judge to state that his charge in laying down the principles of law touching murder, manslaughter, and self-defense, were admirably put, and it is to be regretted that these mistakes have occurred.

The last question presented by the appeal is that relating to an alleged error in the Circuit Judge in his reference to the second request to charge, which request was as follows: "Every touching of the person of another in a rude, violent or revengeful manner, without a warrant, except in cases of felony, is in law an assault, which the person so touched

has a right to resist, and against which he may use as much force as is necessary." The language of the charge in this connection was as follows: "In this case the right to make an arrest cannot arise. The law in this State has been correctly stated and has been established in this very case, because it existed long before this case ever arose, that a private person—that is, a person not an officer of the law—may arrest another who is guilty of a felony, either when the felony is committed in view of the party making the arrest or where he has reasonable and certain information that a felony has been committed. But except in cases of felony, a private individual has no right under the law of this State to make an arrest. There is nothing in this case to show that the deceased was an officer of the law, and there is nothing to show—at least, there is no sufficient proof to show—that there had been a felony committed; and, therefore, under the facts of this case, you would be bound to conclude that if he were attempting to arrest this defendant, in the legal sense of restraining or detaining him, it would not have been a lawful arrest. But, Mr. Foreman and gentlemen, the mere fact that a person is making an arrest without a warrant, and is making an illegal arrest, will not justify the party being arrested in taking the life of his assailant. It is an assault and battery for a man without a warrant to make an arrest—that is, to make an illegal arrest. If he lays his hands on a party and arrests him illegally, it is an assault and battery, and an assault and battery may be repelled with so much force as may be necessary. But the mere restraining a man, depriving him for a time of his liberty, would not justify the other in taking his life. The law only allows the plea of self-defense, where the act is done in defense of life and limb, not in the defense of liberty, and for the very manifest reason that a man in danger of losing his life, or of receiving serious harm to his body, is impelled, the necessity exists for his immediate action, in order to defend himself against such danger. But if it is a mere restraint of his liberty, it is better, and the

law would hold it to be his duty, to submit even to illegal restraint rather than to take the life of his fellow-man, because the law furnishes abundant means for him to regain his liberty and affords him sufficient remedy for illegal restraint, but it cannot afford to him sufficient remedy for the taking of his life or for inflicting such injury upon his person as may result in permanently maiming him; and, therefore, it permits a man to exercise such force as may even result in taking the life of his assailant, when his own life or personal security, the security of his body, is involved. So with these comments I charge you the second proposition of law." We remark that, although the language of the Circuit Judge, when he spoke of the right of arrest not arising in this case, might, if it had occurred without any explanatory words from the Judge, have occasioned some criticism, but following these words as he did with the fullest explanation, there is no reversible error so far as this language is concerned. A much more serious question arises when the Circuit Judge comes to discuss the right of a man to relieve himself from an illegal arrest. We cannot hold that the Judge has stated the law of this State on this subject. The Constitution sacredly guards life, *liberty* and property of the citizen, and our laws have always upheld the sacred boon of liberty. In the last edition of the American and English Encyclopedia of Law, at page 852 of volume 2, occur these words: "An unlawful arrest vests no authority in the one arresting; hence one arrested may lawfully escape if possible, and he has the right to use as much force as may be necessary to regain his liberty, even to the actual taking of life." We cannot agree that the Circuit Judge is correct in laying down the law so as to maintain a distinction between the right of a man to resist an injury to life or body, and his right to resist an invasion of his personal liberty—for each of the three occupy the same plane. This position by no means lays down the rule that a man may kill his assailant to protect any one of the three, but it is the province of the jury to determine if the facts and circumstances sur-

rounding each case would justify the taking of the life of the person who shall seemingly jeopardize life, or serious bodily injury, or the liberty of the person assailed. While all this is true, it does seem to the writer of this opinion that when a thief is detected by the owner with his goods while in his house or on the premises of the owner, that the owner is justified in making efforts to regain his property from the thief, even if he has to use force to accomplish his purpose. It seems idle to say that if the goods stolen shall amount in value to $20 or more, that such being a felony, the thief may be arrested without a warrant for such arrest; but that if the goods be of the value of $19 or less, stolen from the owner in his presence, the owner will not be justified in arresting the thief and recovering his property. Take the case at bar as an illustration: here Mr. Suber, the owner, sees the defendant take money from his money drawer, and goes to the money drawer and sees for himself that the thief has actually taken his money, and when he immediately calls upon the thief to restore his money to him, and upon the refusal of the thief to deliver to him his money, the owner catches hold of the thief to try and regain his money, and he is killed by the thief. Does it not seem that the law should justify the owner in this arrest of the thief? I would be understood upon this matter, for we mean only to hold that when a thief is caught in the act of stealing from the person, or the house, or the premises, the owner, in such a case, is authorized to arrest the thief and regain his property at that moment in the possession of the thief. This is what, no doubt, was in the mind of the Circuit Judge, and if he had charged in this restricted sense, I would not have been willing to hold him in error.

As we have seen, there must be a new trial. It is, therefore, the judgment of this Court that the judgment of the Circuit Court be reversed, and that the case be remanded to the Circuit Court for a new trial.

MR. CHIEF JUSTICE McIVER and JUSTICES JONES and GARY concur in the result.