511 S.E.2d 79

**The STATE, Respondent,**

v.

**James L. McATEER, Jr., Appellant.**

No. 2795.

Court of Appeals of South Carolina.

Heard Sept. 1, 1998.

Decided Dec. 21, 1998.

Rehearing Denied Feb. 27, 1999.

---

616

■■■■■■■■■■
■■■■■■■■■■
■■■■■■■■■■■■■■■■■

Michael Langford Brown, of Rock Hill, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Charles H. Richardson, all of Columbia; and Solicitor Thomas E. Pope, of York, for respondent.

## ORDER

PER CURIAM:

This case was originally heard by a panel of this Court, which issued an opinion affirming the Appellant's conviction. *See State v. McAteer*, Op. No. 2795 (S.C.Ct.App. filed February 17, 1998). The full Court voted to rehear the case *en banc*. S.C.Code Ann. § 14–8–90(b) (Supp.1997) provides that when this Court hears a case en banc, six votes are required to reverse the judgment below. The rehearing resulted in four judges voting to affirm the Appellant's conviction and five judges voting to reverse the conviction. Therefore, pursuant to section 14–8–90, the Appellant's conviction is hereby **AF-FIRMED.** In view of the fact that the granting of the rehearing en banc effectively vacated the original panel opinion, the panel opinion is hereby withdrawn, and the opinions of the Court attached hereto are substituted therefor.

GOOLSBY, Judge:

James L. McAteer appeals his conviction for driving under the influence, second offense. He argues his motion to exclude evidence obtained from his arrest was improperly denied by the trial judge. The dispositive question is whether a private citizen may arrest without a warrant for a misdemeanor involving a breach of the peace. We believe that such an arrest is valid and affirm.

## FACTS

On February 12, 1995, at approximately 6:00 a.m., City of Rock Hill police officer Randolph Thompson was driving down Vistawood Road in York County, approximately one-half mile outside the city limits of Rock Hill, when he observed a vehicle stopped in the middle of the road with its interior light on. Officer Thompson was still in uniform, having just gone off duty, but he was driving his personal vehicle. As Officer Thompson approached the vehicle from behind, he observed it move approximately 250 yards farther down the road and pull only halfway into a driveway. Officer Thompson stopped his vehicle and approached the other vehicle on foot to investigate. As the driver of the car, James L. McAteer, rolled down the window, Officer Thompson smelled an odor of alcohol coming from the vehicle. He also noticed several open alcoholic beverage containers lying in the front and back seats.

Officer Thompson then informed McAteer that he could not drive away, that although he was not under arrest, he could not leave until a York County deputy arrived. Within a few minutes, Trooper J.T. Suter of the South Carolina Highway Patrol arrived at the scene. After first talking with Officer Thompson, Trooper Suter performed several sobriety tests on McAteer and formally arrested him for driving under the influence of alcohol. Trooper Suter transported McAteer to the York County Detention Center, where McAteer registered a Datamaster breath test reading of .18.

At trial, McAteer sought to suppress all evidence resulting from his arrest. McAteer argued the arrest was illegal because Officer Thompson had no police authority to arrest outside the municipal boundaries of Rock Hill and no power to make a citizen's arrest under the circumstances presented. The trial court denied McAteer's motion, proceeded with the bench trial, and convicted McAteer.

## DISCUSSION

### Standard of Review

In reviewing criminal cases, this court may review errors of law only. *State v. Cutter*, 261 S.C. 140, 199 S.E.2d 61 (1973). Absent evidence to the contrary, the regularity and legality of

the proceedings in general sessions court is presumed. *Weathers v. State*, 319 S.C. 59, 459 S.E.2d 838 (1995).

## Validity of the Arrest

The parties stipulated that McAteer was "peacefully detained" by Thompson. Such a detention constitutes a seizure and is subject to the same protection under the Fourth and Fourteenth Amendments as an arrest. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Sikes v. State*, 323 S.C. 28, 448 S.E.2d 560 (1994). McAteer is correct that if such a detention is unlawful, any evidence stemming from the detention must be excluded as "fruit of the poisonous tree." *Sikes*, 323 S.C. at 32, 448 S.E.2d at 563. We, however, find the detention lawful because Officer Thompson had authority under the common law to detain McAteer for a misdemeanor involving a breach of the peace.

Because Officer Thompson was outside the jurisdictional limits of the City of Rock Hill when he first encountered McAteer, he had no police authority to detain McAteer. *See* S.C.Code Ann. § 17–13–40 (1985). An officer may, however, arrest outside his territorial jurisdiction if the arrest would be proper for an ordinary citizen. *State v. Harris*, 299 S.C. 157, 382 S.E.2d 925 (1989).

In 1712, South Carolina enacted the reception statute, incorporating the body of English common law into the jurisprudence of South Carolina. *Huff v. Jennings*, 319 S.C. 142, 459 S.E.2d 886 (Ct.App.1995). The reception statute provides: "All, and every part, of the common law of England, where it is not altered by the Code or inconsistent with the Constitution or laws of this State, is hereby continued in full force and effect in the same manner as before the adoption of this section." S.C.Code Ann. § 14–1–50 (1976).

At common law, a private citizen could lawfully arrest, without a warrant, one whom he saw commit a misdemeanor involving a breach of the peace. *See Carroll v. United States*, 267 U.S. 132, 157, 45 S.Ct. 280, 69 L.Ed. 543 (1925) ("[A] peace officer *like a private person* has at common law no power of arresting without a warrant *except* when a breach of the peace has been committed in his presence or there is reasonable ground for supposing that a breach of peace is about to be committed or renewed in his presence." (emphasis added)

(quoting 9 *Halsbury's Laws of England* 612)); *see also State v. Nall*, 304 S.C. 332, 339 n. 7, 404 S.E.2d 202, 206–07 n. 7 (Ct.App.1991) (stating that the common-law rule "permits a private person to arrest for a misdemeanor committed in his presence, if it constitutes a breach of the peace" (citing *Price v. Seely*, 10 Cl. & Fin. 28, 8 Eng.Rep. 651 (1843); *Timothy v. Simpson*, 1 Cr.M. & R. 787, 149 Eng.Rep. 1285 (1835); 2 Hawk P.C., c. 12, s. 20, at 120 (8th ed. 1824)));[1] *Knot v. Gay*, 1 Root 66 (Conn.Super.1789) (holding that during an affray, any

---

1. The dissent asserts that *State v. Anderson*, 19 S.C.Law (1 Hill) 327 (1833), held "an arrest by a private person was *only* justified if the proof showed a legal [*sic*] felony was committed, and the prisoner was the perpetrator." (Emphasis added.) We do not think *Anderson* says that. The case simply held a private citizen could arrest without a warrant a person shown to be a felon and a fugitive from justice. *Anderson*, 19 S.C.Law (1 Hill) at 341. The issue before the *Anderson* court was the requisite proof of a felony to justify private arrest when the underlying felony was committed in a foreign state or country because the citizen's arrest would be invalid if no felony actually had been committed or if the citizen had no reasonable basis for believing that the one arrested perpetrated the felony. The case does not address at all the issue of whether a private citizen can arrest another person without a warrant for a breach of the peace committed in the private citizen's presence. *Anderson*, therefore, should not be read as an exhaustive statement of all aspects of the common law on private arrest.

The dissent also asserts that *State v. Griffin*, 74 S.C. 412, 54 S.E. 603 (1906), is applicable to the discussion. The question in *Griffin* was whether the defendant was justifiably resisting an unlawful arrest, because the common law held that if a private citizen arrests upon information of a felony and it later appears that a felony was not in fact committed, then the arrest was unlawful. Thus, like *Anderson*, the "misdemeanor rule" was wholly irrelevant to the issues in *Griffin*.

The dissent also cites *Percival v. Bailey*, 70 S.C. 72, 49 S.E. 7 (1904), stating that the court upheld a finding of liability for false imprisonment when the "offense charged was only a misdemeanor and was not committed in the presence of [a police] officer [because] the arrest was illegal and [a citizen's] giving over the plaintiff to the policeman was illegal." This case too is irrelevant to the issue before us because the court did not address the validity of any private arrest. The opinion focuses only on the officer's actions and does not make clear whether the citizen actually effected an arrest or simply called the police and made the allegedly false accusations. In any case, the issue of warrantless arrest for a breach of the peace misdemeanor was not before the *Percival* court. The court agreed that "the whole matter turn[ed] on whether or not a policeman can legally arrest one charged with an offense less than felony without a warrant, *where the offense charged is not committed in the presence of the officer.*" *Id.* at 73–74, 49 S.E. at 7

person may, without a warrant from a magistrate, restrain any of the offenders, in order to preserve the peace); *Winn v. Hobson,* 54 N.Y.Super.Ct. (22 Jones & S.) 330 (N.Y.Super.1887) (holding that a private person has no power to arrest another for a breach of the peace, or for disorderly conduct, *except at the time when the offense is committed* (emphasis added)); *In re Wallace,* (Gen.Sess.) 4 City H.Rec. 111 (N.Y. 1819) (finding that in case of a breach of the peace, it is the right and duty of every citizen, without a warrant, to use all lawful means to arrest the offender); *Phillips v. Trull,* 11 Johns. 486 (N.Y.1814) (holding that if an affray amounts to a breach of the peace, any private person may, without a warrant, restrain any of the offenders in order to preserve the peace). *See generally* William A. Schroeder, "Warrantless Misdemeanor Arrests and the Fourth Amendment," 58 Mo. L.Rev. 771, 788 (1993) (discussing the common-law rule on warrantless misdemeanor arrests).

McAteer argues that S.C.Code Ann. section 17–13–10 sets out the complete law of citizen's arrest in South Carolina. The statute provides:

**Circumstances where any person may arrest a felon or thief.**

Upon (a) view of a felony committed, (b) certain information that a felony has been committed or (c) view of a larceny committed, any person may arrest the felon or thief and take him to a judge or magistrate, to be dealt with according to law.

S.C.Code Ann. § 17–13–10 (1985).

The history of this statute reveals that it was not intended to abrogate the common-law rule permitting a warrantless

---

(emphasis added). Furthermore, we would point out that the court tellingly stated: "Peace officers have at common law the right to arrest upon view, without warrant, all persons who are guilty of a breach of the peace or other violation of the criminal laws." *Id.* at 74, 49 S.E. at 7.

Finally, the dissent refers to *Loggins v. Southern Ry.,* 64 S.C. 321, 42 S.E. 163 (1902), stating that "[i]f the conductor in *Loggins* had been authorized to arrest as a private person for a breach of the peace misdemeanor, the court would not have had to rely on the statute." Nothing in the *Loggins* opinion indicates that the common-law rule was raised on appeal. The statute was clear that the conductor had authority to arrest for a breach of the peace; therefore, the court did not need to address the common-law rule with which we are concerned.

citizen's arrest upon view of a misdemeanor involving a breach of the peace. As originally enacted, the section merely expanded the common-law rule that a private person who views a felony can arrest the felon without a warrant to also allow a warrantless arrest of a felon upon certain information that a felony has been committed. *Nall,* 304 S.C. at 340, 404 S.E.2d at 207. Subsection (b) expanded the common law by abrogating the restriction that a private person's arrest would be unlawful if it ultimately turns out that no felony was actually committed, even if the arresting party had good information that one had been committed. *See id.* The legislature, therefore, initially intended to address only the rule on warrantless arrests of felons.

Subsection (c) was not enacted until 1898. The prior year, the South Carolina Supreme Court, in *State v. Davis,* 50 S.C. 405, 427, 27 S.E. 905, 913 (1897), employed the original statute to determine that "[f]or a simple petit larceny, a private person has no right to arrest without warrant." This analysis yielded the result that one who kills another in resisting an illegal arrest can be convicted of manslaughter only, not murder. The next year, 1898, the legislature amended this statute to allow a warrantless citizen's arrest upon view of a larceny committed. *See An Act to Amend Section 1 of the Criminal Statutes of South Carolina,* 22 Stat. At Large of South Carolina 809 (1898), *cited in Nall,* 304 S.C. at 340 n. 15, 404 S.E.2d at 207 n. 15.

The *Davis* court did not discuss the "misdemeanor rule" because petit larceny was not a misdemeanor involving a breach of the peace.[2] *See* Sir Matthew Hale, *Pleas of the*

---

2. The dissent criticizes our analysis of *Davis,* saying that we hold "a larceny which directly led to a public affray and, ultimately, the murder of the property owner, was not the 'commission of an unlawful and unjustifiable act, tending with sufficient directness to breach the peace.' " We would point out that in *Davis* the *larceny itself* did not create the breach of the peace; instead, the attempted private arrest led to the gun battle in the streets.

Furthermore, the issue in *Davis* was whether the trial judge's charge was proper. The charge complained of was, "Now, I charge you, as matter of law, that if you see a party stealing your property, if you see a party committing a *larceny,* you have a right to arrest that party." *Davis,* 50 S.C. at 411, 27 S.E. at 907 (emphasis added). The charge reviewed in *Davis,* therefore, expressly addressed only the right of

*Crown: A Methodical Summary* 136 (1678) (listing misdemeanors that constituted a breach of the peace to include affrays, riots, forcible entries and detainers, barretries (defaming, spreading false rumors, and starting fights), and riding armed); 4 Sir William Blackstone, *Commentaries on the Laws of England* 142 (J.B. Lippencott & Co. ed. 1858) (listing similar breach of the peace crimes); *see also State v. Sundberg*, 611 P.2d 44, 47 (Alaska 1980) (quoting a law review article as follows: "Historically, the right to use force in preventing crimes was limited to situations ... *[involving] a felony or a breach of the peace.* Consequently, the threatened commission *of a non-violent misdemeanor, such as pet[it] larceny,* provided no basis for the use of preventive force." (emphasis added)); *Gortarez v. Smitty's Super Valu, Inc.*, 140 Ariz. 97, 680 P.2d 807, 812 (Ariz.1984) ("In the case of misdemeanors such as shoplifting, there is no breach of the peace, and no common law privilege to arrest."); *cf.* 5 Am.Jur.2d *Arrest* § 59 (1995) (stating "[a]rrest by private citizens for shoplifting is not lawful, but a shopkeepers' exception is developing," especially to overcome the "in view" requirement of the felony rule). *But see Nall*, 304 S.C. at 340 n. 15, 404 S.E.2d at 207 n. 15 (stating, in dicta, "at common law ... pet[it] larceny is a breach of the peace").

We believe the legislature intended by its 1898 amendment only to change the result of cases like *Davis* so that one who sees a petit larceny may lawfully arrest the thief.[3]

---

private arrest for petit larceny and did not at all concern the right to privately arrest a thief who commits "physical violence of the person of another trying to effect detention, arrest, or recovery." Dag E. Ytrebert, Annotation, *Larceny as Within Disorderly Conduct Statute or Ordinance*, 71 A.L.R.3d 1156 (1976) (cited by the dissent).

3. Act No. 508 of 1898, 22 S.C.Stat. 809, now codified as S.C.Code Ann. § 17–13–10(c) (1985), took effect February 19, 1898.

That same month, Henry Davis, the defendant in *State v. Davis*, 50 S.C. 405, 27 S.E. 905 (1897), following remand, was again convicted of murder. He thereafter appealed. On September 7, 1898, the supreme court once more overturned his conviction. In doing so, the supreme court seemingly reversed its earlier view regarding the right of a private citizen to arrest another for petit larceny of the private citizen's own property. Mr. Justice Pope, writing for the court, stated,

It seems idle to say that if the goods stolen shall amount in value to $20 or more, that such being a felony, the thief may be arrested without a warrant for such arrest; but that if the goods be of the

Furthermore, a central canon of statutory construction provides that "[t]he common law remains in full force and effect in South Carolina unless changed by clear and unambiguous legislative enactment." *Singleton v. State,* 313 S.C. 75, 83, 437 S.E.2d 53, 58 (1993). "[I]t is presumed that no change in common law is intended unless the Legislature explicitly indicates such an intention by language in the statute." *State v. Prince,* 316 S.C. 57, 66, 447 S.E.2d 177, 182 (1993); *see also* 73 Am.Jur.2d *Statutes* § 185 (1974) ("The fact that a statute contains a partial codification of a particular rule or principle of the common law does not necessarily abrogate the remainder of the common-law rule; should the courts hold that when any rule or principle of the common law is by the legislature partially incorporated into a statute, the remainder of the rule is thereby repealed or annulled, endless trouble and confusion would result, necessitating in all cases a complete codification of the subject dealt with by the statute." (footnotes omitted)). There is no language in S.C.Code Ann., title 17, chapter 13 indicating an intent to change the common law not codified therein. Moreover, in light of the history of this statute, we hold that section 17–13–10 merely expands on the common law and in no way restricts it. Thus, the common-law rule permitting a warrantless citizen's arrest upon view of a misdemeanor involving a breach of the peace remains applicable today.

value of $19 or less, stolen from the owner in his presence, the owner will not be justified in arresting the thief and recovering his property.... I would be understood upon this matter, for we mean only to hold that when a thief is caught in the act of stealing from the person, or the house, or the premises, the owner, in such a case, is authorized to arrest the thief and regain his property at that moment in the possession of the thief.

*State v. Davis,* 53 S.C. 150, 154, 31 S.E. 62, 63 (1898). Mr. Justice Pope nowhere mentioned the 1898 Act (which, of course, was not effective at the time Davis allegedly committed the murder) or any other statute, and he did not distinguish between petit and grand larceny. We glean from this that the supreme court recognizes that there are circumstances, not covered by statute, that permit a warrantless arrest by a private citizen. *See State v. Byrd,* 72 S.C. 104, 110, 51 S.E. 542 (1905) (stating that at common law, a warrantless arrest could not be made for any offense less than a felony except for a breach of the peace); *cf. State v. Nall,* 304 S.C. 332, 339, 404 S.E.2d 202, 206 (Ct.App.1991) ("Finally, the law permits a private person to arrest for a misdemeanor committed in his presence, if it constitutes a breach of the peace.").

### DUI as a Breach of the Peace

South Carolina courts have defined "breach of the peace" as embracing a great variety of conduct destroying or menacing public order and tranquility. In general terms, it is a violation of public order, a disturbance of public tranquility, by any act or conduct inciting to violence. Although it includes acts likely to produce violence in others, actual violence is not an element of breach of peace.... "[It] may be generally defined as such a violation of public order as amounts to a disturbance of the public tranquility, by act or conduct either directly having this effect, or by inciting or tending to incite such a disturbance of the public tranquility. Under this general definition, therefore, in laying the foundation for a prosecution for the offense of breach of the peace it is not necessary that the peace actually be broken; commission of an unlawful and unjustifiable act, tending with sufficient directness to breach the peace, is sufficient."

*State v. Peer*, 320 S.C. 546, 552, 466 S.E.2d 375, 379 (Ct.App. 1996) (citations omitted) (quoting 12 Am.Jur.2d *Breach of Peace* § 4 (1964)).

The offense of driving under the influence, we hold, is a misdemeanor involving a breach of the peace.[4] *See State v. Hart*, 669 N.E.2d 762 (Ind.Ct.App.1996); *State v. Rue*, 72 N.M. 212, 382 P.2d 697 (N.M.1963); *State v. Jennings*, 112 Ohio App. 455, 176 N.E.2d 304 (Ohio Ct.App.1959); *Romo v. State*, 577 S.W.2d 251 (Tex.Crim.App.1979); *see also* 11 C.J.S. *Breach of the Peace* § 5 at 265 (1995) ("While intoxication alone does not ordinarily constitute a breach of the peace, the operation of a motor vehicle while intoxicated is an activity which threatens the public security and involves violence, and as such, it amounts to a breach of the peace." (footnote omitted) (citing *City of Waukesha v. Gorz*, 166 Wis.2d 243, 479 N.W.2d 221 (Wis.Ct.App.1991), *review denied*, 482 N.W.2d 107 (Wis.1992))).

We, therefore, find Officer Thompson's citizen's arrest of McAteer was a legal arrest for a misdemeanor involving a

---

4. DUI is a significant cause of deaths on America's highways. *See* Matthew L. Wald, *Safety Group Reports Rise in Fatalities on Highways*, N.Y. Times, Oct. 10, 1996, at A24 (stating that alcohol-related traffic fatalities in 1995 totalled 17,274, up four percent from 1994).

breach of the peace and affirm. *See, e.g., Edwards v. State,* 462 So.2d 581 (Fla.Dist.Ct.App.1985) (holding off-duty police officer, outside of his jurisdiction, made a valid citizen's arrest of an intoxicated driver); *City of Waukesha v. Gorz,* 166 Wis.2d 243, 479 N.W.2d 221 (Wis.Ct.App.1991); *review denied,* 482 N.W.2d 107 (Wis.1992) (holding driving while intoxicated is a breach of the peace, an offense for which a police officer, acting outside his jurisdiction, may make a valid citizen's arrest).

**AFFIRMED.**

HUFF and STILWELL, JJ., concur.

CURETON, J., concurs in a separate opinion.

CONNOR, J., dissents in a separate opinion in which HOWELL, C.J., HEARN, ANDERSON, and HOWARD, JJ., concur.

CURETON, Judge (Concurring):

While I am of the view that Judge Connor's opinion is controlling [1] on the question of the continued validity of the law of the right of private individuals to arrest for a breach of the peace, I, nevertheless, concur with Judge Goolsby's conclusion that the common law right of a citizen to arrest for breach of peace has not been abrogated by statute.

The earliest statute I have been able to locate dealing with the right of a private citizen to arrest without a warrant for a misdemeanor committed in his presence is Act No. 4731 of 1865 entitled, "An Act To Amend The Criminal Law." That Act provided that "[u]pon view of a misdemeanor committed by a person of color, any person present may arrest the offender and take him before a Magistrate, to be dealt with as the case may require." It should be noted that this right of warrantless arrest applied only to persons of color. In fact, the provision specifically required that in the case of a "misdemeanor committed by a white person toward a person of color," complaint should be made to a magistrate who would

---

1. I, of course, recognize that inasmuch as S.C.Code Ann. § 14–8–90(b) requires a concurrence of six judges "for reversal of the judgment below," the conviction must stand.

cause the offender to be arrested. Act No. 4731, however, was repealed by Act No. 4802 of 1866. At that time the language of S.C.Code Ann. § 17–13–10, subsections (a) and (b) was enacted. Subsection (c) of § 17–13–10 was not enacted until 1898.

Judge Goolsby and Judge Connor have vastly divergent views of the effect of the enactment of subsection (c) on the continued viability of the common law right of warrantless arrests for breach of the peace in South Carolina. Michael S. Hindus, in his work *Prison and Plantation: Crime, Justice, and Authority in Massachusetts and South Carolina, 1767–1878* (1980), states, "South Carolina's mixture of common law, ancient English statutes, and state laws confounded laymen and lawyers alike [in the 1800s]." It is no wonder that residuals of that confusion continue today.

I agree with Judge Goolsby that the motivation for the enactment of subsection (c) was *State v. Davis*, 50 S.C. 405, 27 S.E. 905 (1897). I disagree with any suggestion that either the 1865, 1866 or 1898 statute indicates an intent by the legislature to annul the common law right of private individuals to arrest without a warrant for breach of the peace committed in their presence. The statutes do not explicitly repeal the common law right nor do they manifest an intent to take over the "entire field of operations" of the law of warrantless arrests in South Carolina. *See Branchville Motor Co. v.. Adden,* 158 S.C. 90, 95, 155 S.E. 277, 279 (1930). This conclusion is even more compelled when we consider the fact that in 1865 the Legislature made distinctions as to who could and who could not be arrested for misdemeanors without a warrant. Although the effect of the repeal of the 1865 statute is to blot it out retrospectively as if it never existed, *Taylor v. Murphy,* 293 S.C. 316, 360 S.E.2d 314 (1987), the repealed statute is evidence the Legislature has been aware of the status of the law of warrantless arrests for a misdemeanor since 1865 and could have dealt with the subject in a more specific manner had it wanted to. If a statute is susceptible of more than one construction; it is not to be construed as altering the common law further than the express language of the statute. *Branchville Motor Co.,* 158 S.C. 90, 155 S.E. 277.

Further, the fact that the cases have not specifically dealt with the right of a warrantless arrest for breach of the peace [2] for a very long time does not militate against recognition of the right. In *State v. Carson,* 274 S.C. 316, 262 S.E.2d 918 (1980), our Supreme Court recognized the offense of misprision of felony even though the offense had apparently lain dormant since 1712. *See* William S. McAninch and W. Gaston Fairey, *The Criminal Law of South Carolina* 40 (2d ed. 1989). The court reasoned that since the "General Assembly [had] neither enacted, modified nor repealed the common law offense of misprision of felony," the offense was still viable. *Carson,* 274 S.C. at 319, 262 S.E.2d at 920. Likewise, as to the right of a private individual to arrest for breach of the peace, the Legislature has neither "enacted, modified nor repealed" such common law right and it remains the law of this state.

From a historical perspective, the right of a private citizen to arrest for a breach of the peace without a warrant originated in the American colonies during a time when the citizens themselves were considered the keepers of the peace. W. Hardy Wickwar, *Criminal Policy in South Carolina* (1968). Pre–Revolutionary "codes required any bystander who witnessed a crime to arrest the party or parties thereto, and levied a fine against him if he did not." Jack K. Williams, *Vogues in Villainy: Crime and Retribution in Ante–Bellum South Carolina* 63 (1959). *See also* Benjamin James, *Digest of the Laws of South Carolina* (1822). In view of the availability of our elaborate police organizations for keeping the peace and the problems associated with making arrests, the practicality of continuing the right of private individuals to arrest should at least be reevaluated by the proper body. Nevertheless, it is not the function of this court to nullify that right. *See Page v. Winter,* 240 S.C. 516, 126 S.E.2d 570 (1962).

As to the question of whether the crime of driving under the influence constitutes a breach of the peace, I have no hesitancy in finding that it does. Further, I know of no other activity that has a greater potential for threatening the public security

---

**2.** I agree with Judge Connor that the precedent of *State v. Nall,* 304 S.C. 332, 404 S.E.2d 202 (Ct.App.1991), is at least questionable.

and tranquility than does operating a vehicle on our public highways while intoxicated.

CONNOR, Judge (dissenting):

We respectfully dissent. The majority [1] opinion engages in a tortured analysis which relies on very little South Carolina law for support and whose policy will leave in its wake very little order.

### . VALIDITY OF THE ARREST

The majority hinges its opinion exclusively on dicta in this Court's opinion in *State v. Nall*, 304 S.C. 332, 404 S.E.2d 202 (Ct.App.1991), and on sources from other jurisdictions to support its position the common law grants private persons the authority to arrest for a breach of the peace misdemeanor committed in their presence. A review of the history of citizen's arrest in South Carolina, however, reveals otherwise. After a thorough analysis of the opinions of the South Carolina Supreme Court and the actions of the General Assembly, we are convinced the law of our State grants private citizens no such authority.

The *Nall* Court relied on English common law to support its proposition private citizens can arrest for breach of the peace misdemeanors committed in their presence. It cited two old English cases and the English treatise, *Hawkin's Pleas of the Crown*. *Nall*, 304 S.C. at 339 n. 7, 404 S.E.2d at 206–07 n. 7. As noted by the majority, South Carolina's reception statute declares the common law of England shall continue in effect in South Carolina. S.C.Code Ann. § 14–1–50 (1977). The common law of England, however, is only presumed to govern if there is no South Carolina authority to the contrary. S.C.Code Ann. § 14–1–50 (1977) (English common law continues where not altered by the Code or inconsistent with the Constitution or laws of this State); *State ex rel. McLeod v. Sloan Constr. Co.*, 284 S.C. 491, 496, 328 S.E.2d 84, 87 (Ct.App.1985) ("[T]he English common law ordinarily is pre-

---

1. For want of a better term, we refer to the prevailing view, to which four members of the Court adhere, as the majority, even though the agreement of five members of the Court numerically constitutes a majority.

sumed to govern if there is no South Carolina authority to the contrary."). Moreover, the treatise cited in *Nall* is a secondary authority.

The South Carolina case *State v. Anderson*, 19 S.C.L. (1 Hill) 327 (1833), predates the cases cited in *Nall.* According to *Anderson*, an arrest by a private person was only justified if the proof showed a legal felony was committed and the prisoner was the perpetrator. *Id.* at 341. The South Carolina Supreme Court has restated this rule several times. *See, e.g., State v. Griffin*, 74 S.C. 412, 54 S.E. 603 (1906) (prior to enactment of the statute, the rule of law prevailing in this State was the rule stated in *Anderson*); *State v. Davis*, 50 S.C. 405, 27 S.E. 905 (1897) (common law provided private person right to arrest person who committed or attempted to commit a felony in his view; private person not authorized to arrest for a misdemeanor).

The majority claims *Anderson* "simply held a private citizen could arrest without a warrant a person shown to be a felon and a fugitive from justice," and "does not address at all the issue of whether a private citizen can arrest another person without a warrant for a breach of the peace committed in the private citizen's presence."

However, *Anderson* cannot be read in isolation. In 1865, the General Assembly enacted a statute to govern warrantless arrest in this state. *See An Act to Amend the Criminal Law,* Act No. 4731, § XXIX–XXXII, 13 South Carolina Statutes at Large 278 (1865). That statute provided in pertinent part:

XXIX. Upon view of a misdemeanor committed by a person of color, or by a white person toward a person of color, a Magistrate may arrest the offender . . . [.]

XXX. Upon view of a misdemeanor committed by a person of color, any person present may arrest the offender and take him before a Magistrate, to be dealt with as the case may require. In case of a misdemeanor committed by a white person toward a person of color, any person may complain to a Magistrate, who shall cause the offender to be arrested . . . [.]

XXXI. Upon view of a felony committed, or upon certain information that a felony has been committed, any person may arrest the felon . . . [.]

XXXII. In the night time, any person may be arrested by such efficient means as the darkness and the probability of his escape render necessary, even if his life should be thereby taken, in cases where he has committed a felony, or has entered a dwelling-house with evil intent, or has broken, or is breaking into an out-house, with a view to plunder, or has in his possession stolen property, or being under circumstances which raise just suspicion of his design to steal or to commit some felony, flees when he is hailed.

*Id.*

This statutory scheme reflects an intent by the Legislature to regulate all situations, both misdemeanors and felonies, in which a private citizen had the right to arrest without a warrant. In terms of misdemeanors, the statute specifically limited the right of warrantless arrest only if the perpetrator was a person of color. Moreover, the statute is silent concerning a private citizen's right to arrest without a warrant for breach of the peace committed in the citizen's presence.

By enacting a statute which drastically curtailed a private citizen's right of warrantless arrest, we believe the Legislature intended to "take over the entire field of operations, to the necessary exclusion of the [common law]." *See Branchville Motor Co. v. Adden,* 158 S.C. 90, 95, 155 S.E. 277, 279 (1930) (Where there is an existing established right, and an existing remedy, either statutory or at common law, a new statute, recognizing the right and providing a new remedy supersedes the existing remedy if "[i]t clearly appears that by the new act the Legislature intended to take over the entire field of operations, to the necessary exclusion of the old remedy."); 73 Am.Jur.2d Statutes § 185 at 386 (1974) ("[W]henever a statute undertakes to provide for a specific matter or thing already covered by a common-law rule, omissions in its provisions of certain portions of the rule may be taken as indicative of a legislative intent to repeal or abrogate the same, although in all other respects the statute and common law are in exact conformity.").

In 1866, the General Assembly took another step toward eliminating a private citizen's right to arrest without a warrant for a misdemeanor. *See An Act to Alter the Act Entitled "An Act to Amend the Criminal Law,"* Act No. 4802, §§ XI–XII,

13 South Carolina Statutes at Large 406 (1866). This amendment repealed all of the 1865 provisions regarding warrantless arrest for misdemeanors. Significantly, the Legislature only retained the 1865 provisions involving a warrantless arrest when a felony had been committed, upon certain information that a felony had been committed, and situations involving nighttime warrantless arrests as set forth above. These provisions are the precursors to the current codification of S.C.Code Ann. § 17–13–10(a), (b) (1985) and S.C.Code Ann. § 17–13–20 (1985) (amended 1995).

In 1897, the Supreme Court concluded private persons had no right to arrest for misdemeanors. *State v. Davis*, 50 S.C. 405, 426, 27 S.E. 905, 912 (1897). In reaching this decision, the Supreme Court specifically cited *State v. Anderson*, 19 S.C.L. (1 Hill) 327 (1833). In discussing *Davis*, the majority suggests the Court only applied the existing statute, which involved a private citizen's right to make a warrantless arrest when a felony had been committed, or upon certain information that a felony had been committed. Actually, the Court analyzed both the common law and the statute and found no authority for citizens to arrest for misdemeanors in either. *Id.*

The *Davis* Court stated:

At common law a private person had the right to arrest, without warrant, any person who committed or attempted to commit a felony in his view. In *State v. Anderson*, 1 Hill (S.C.) 212, the court said that, *in order to justify an arrest by private persons, the proof must show that a felony was committed*, and that the prisoner was the perpetrator. Section 1 of the Criminal Code, quoted above, allows any person to arrest upon view of a felony committed, or upon certain information a felony has been committed.

*Davis*, 50 S.C. at 426, 27 S.E. at 912 (emphasis added).

According to *Davis*, the trial judge erred by charging the jury that if one sees another committing a larceny, one has a right to arrest him. *Id.* The Court based its holding on the lack of evidence concerning the amount stolen. It pointed out both the common law and the statute and reasoned, if less than twenty dollars had been stolen, then only petit larceny had been committed. Accordingly, the commission of petit

larceny, a misdemeanor, would not authorize a citizen's arrest. *Id.* at 426–27, 27 S.E. at 912–13.

To get around the *Davis* holding, the majority claims petit larceny is not a breach of the peace, and therefore, the *Davis* holding did not affect the common law rule.[2] "Breach of the peace" is defined as "commission of an unlawful and unjustifiable act, tending with sufficient directness to breach the peace." *State v. Peer,* 320 S.C. 546, 552, 466 S.E.2d 375, 379 (Ct.App. 1996) (quoting 12 Am.Jur.2d *Breach of the Peace* § 4 (1964)). By definition, one must look at the circumstances surrounding the specific act in question to make an accurate determination of whether an act is a breach of the peace. "For instance, hurling objects in an open deserted field is not breach of the peace, but throwing them near a tavern is." 12 Am.Jur.2d *Breach of the Peace* § 10 at 540–41 (1997).

Consequently, not all instances of petit larceny rise to the level of breach of the peace. A larceny committed in an isolated area, by stealth, for example, may not "tend with sufficient directness to breach the peace." *Cf.* Dag E. Ytreberg, Annotation, *Larceny as Within Disorderly Conduct Statute or Ordinance,* 71 A.L.R.3d. 1156, 1157 (1976) ("[P]etit larceny ... unaccompanied by physical violence to the person of another trying to effect detention, arrest, or recovery, was not an offense defined or included in a general disorderly conduct ordinance.").

Many instances of petit larceny, however, would constitute breach of the peace. The defendant in *Davis* was stealing money from a cash drawer when the owner confronted him. The owner yelled at the defendant, who then took more money from the drawer and ran. When the owner demanded the money back, the defendant continued on. The owner gave chase and a fight ensued outside the store. During the fight, the defendant shot the owner twice. The following day, the owner died from his injuries. *Davis,* 50 S.C. at 420, 27 S.E. at 910.

The majority asserts in *Davis* the "larceny itself did not create the breach of the peace; instead the attempted private

---

2. However, the majority cites no South Carolina law for this proposition. In fact, it refers only to *Nall* which specifically held petit larceny was a breach of the peace.

arrest led to the gun battle in the streets." Considering this claim, we return to the definition used by the majority defining breach of the peace as

> embracing a great variety of conduct destroying or menacing public order and tranquility. In general terms, it is a violation of public order, a disturbance of public tranquility, *by any act inciting to violence.* Although it *includes acts likely to produce violence in others,* actual violence is not an element of breach of the peace.... "[It] may be generally defined as such a violation of public order as amounts to a disturbance of the public tranquility, by act or conduct *either directly having this effect, or by inciting or tending to incite* such a disturbance of the public tranquility. Under this general definition, therefore, in laying the foundation for a prosecution for the offense of breach of the peace it is not necessary that the peace be actually broken; commission of an unlawful and unjustifiable act, tending with sufficient directness to breach the peace is sufficient."

*State v. Peer,* 320 S.C. 546, 552, 466 S.E.2d 375, 379 (Ct.App. 1996) (citations omitted) (quoting 12 Am.Jur.2d *Breach of the Peace* § 4 (1964)) (emphasis added).

Under this definition, the larceny in *Davis* was the act or conduct that incited the property owner to engage in the public affray and resulting gun battle in the streets. It is hard to imagine an act or conduct that is more likely to incite someone to violence than stealing the person's property directly from him. Yet, the majority firmly denies the thief in *Davis* breached the peace. McAteer, however, who drove two hundred and fifty yards on an isolated dirt road and pulled into a dirt driveway committed an act inciting violence, according to the majority.

The *Davis* Court squarely faced the issue of whether an arrest was invalid if less than twenty dollars had been stolen and a citizen attempted an arrest for a breach of the peace misdemeanor committed in the citizen's presence. The Court invalidated such an arrest, holding citizens in South Carolina are not authorized to arrest for misdemeanors.

The General Assembly reacted to *Davis* the next year by amending the statute to allow citizens to arrest "upon view of a *larceny* committed." *An Act to Amend Section 1 of the*

634

*Criminal Statutes of South Carolina*, Act No. 508, 22 South Carolina Statutes at Large 809 (1898) (emphasis added). Realizing the Court believed neither the common law nor the statute authorized a citizen to arrest for a petit larceny that was a clear breach of the peace, the Legislature amended the statute to rectify the situation. However, rather than specifically including all breach of the peace misdemeanors, the Legislature narrowly crafted the amendment to include only larceny.[3]

Since the amendment, the South Carolina Supreme Court has upheld a finding of liability for false imprisonment against a citizen who detained the plaintiff for the crime of disorderly

---

**3.** Therefore, we agree with the majority the Legislature "intended by its 1898 amendment only to change the result of cases like *Davis* so that one who sees a petit larceny may lawfully arrest the thief."

We disagree, however, with the majority's interpretation of the Supreme Court's decision in *Davis* II, a decision filed several months after the enactment of the 1898 amendment. *See State v. Davis*, 53 S.C. 150, 31 S.E. 62 (1898). Following remand, Davis was again convicted of murder. On appeal, the Supreme Court again reversed his conviction. By reversing Davis' conviction, the majority contends the "supreme court seemingly reversed its earlier view regarding the right of a private citizen to arrest another for petit larceny of the private citizen's own property." In reaching this conclusion, the majority relies on the following language of the opinion,

It seems idle to say that if the goods stolen shall amount in value to $20 or more, that such being a felony, the thief may be arrested without a warrant for such arrest; but that if the goods be of the value of $19 or less, stolen from the owner in his presence, the owner will not be justified in arresting the thief and recovering his property.... I would be understood upon this matter, for we mean only to hold that when a thief is caught in the act of stealing from the person, or the house, or the premises, the owner, in such a case, is authorized to arrest the thief and regain his property at that moment in the possession of the thief.

*Davis*, 53 S.C. at 154, 31 S.E. at 63. Based on the quoted language distinguishing the value of stolen goods, the Supreme Court recognized the distinction between an impermissible warrantless arrest for petit larceny, a misdemeanor, and a permissible arrest for larceny, a felony. Just as the Legislature only intended by its 1898 amendment to change the result of cases like *Davis*, so too did the Supreme Court recognize the right of a private citizen to make a warrantless arrest only in this very limited situation. In fact, the Supreme Court noted it would not have found error in the trial judge's charge had he charged "in this restricted sense." *Id.* at 154, 31 S.E. at 63. Accordingly, we do not believe the *Davis* II decision can be read to expand a private citizen's right to make a warrantless arrest beyond what is permitted by statute.

conduct and turned him over to the police. *Percival v. Bailey,* 70 S.C. 72, 49 S.E. 7 (1904). The plaintiff in *Percival* was interfering with the defendant's laborers and being disorderly. *Id.* at 73, 49 S.E. at 7. The defendant held the plaintiff and delivered him to the custody of a City of Columbia police officer. The plaintiff sued for false imprisonment. The Court held:

> The first cause of action contains the allegations, the defendants "gave the plaintiff into the custody of a policeman of the city of Columbia, &c." That was an illegal act, unless the offense charged is a felony or was committed in the presence of the officer. The offense charged is only a misdemeanor, and there is no allegation that it was committed in the presence of the officer. The arrest was, therefore, illegal, *and the giving over the plaintiff to the policeman was illegal.*

*Percival,* 70 S.C. at 74, 49 S.E. at 7 (emphasis added).

The majority claims *Percival* is "irrelevant to the issue before us because the court did not address the validity of any private arrest." They also argue *Percival* is irrelevant because the opinion does not make clear whether the citizen actually effected an arrest or simply called the police. Considering the Court upheld a finding of false imprisonment against the citizen defendant, specifically finding "the giving over the plaintiff to the policeman was illegal," we believe *Percival* is precisely on point. The language in *Percival* makes it clear the facts at least support a detention, which is exactly what happened to McAteer. In fact, the State stipulated Thompson's detention of McAteer was not an arrest.

As the majority acknowledges, the *Percival* Court specifically cited the common law rule granting *peace officers* the "right to arrest upon view without warrant all persons who are guilty of breach of the peace or other violation of the criminal laws." *Id.* at 74, 49 S.E. at 7. The Court further definitively stated, "The foregoing is the rule, and its modifications, so far announced in this State, with reference to arrest without warrant for offenses less than felony." *Id.* at 74, 49 S.E. at 7–8.

The majority perceives support for its position in the *Percival* Court's statement the matter turned on whether or not the officer could legally arrest. To the contrary, the Court looked

to the officer's authority precisely because a citizen had no authority to arrest for any misdemeanor. If the South Carolina Supreme Court believed a common law rule granted citizens the right to arrest for breach of the peace, it would have said so.

Two years prior to *Percival,* the Supreme Court had decided *Loggins v. Southern Ry. Co.,* 64 S.C. 321, 42 S.E. 163 (1902). In *Loggins,* the jury found the conductor of a train liable for unlawful arrest of an unruly passenger. The passenger obviously breached the peace by behaving in a boisterous manner, shouting and cursing at other passengers, throwing a rock against the train, and, finally, rocking the train itself. *Id.*

The Court reversed the jury's verdict and ordered a new trial. It cited the statute now codified as S.C.Code Ann. § 58–17–3610 (1977), which declares conductors of railroad trains and station or depot agents "conservators of the peace." The statute grants these individuals "the common-law power of constables to make arrests," but limits that power to "their respective trains" or "their respective places of business." *Id.*

A comparison of the holdings in *Percival* and *Loggins* makes it even more apparent the South Carolina Supreme Court does not believe a common law rule exists granting all citizens the right to arrest under the circumstances in McAteer's case. Where the citizen in *Percival* had no statutory authority to detain the plaintiff, the Supreme Court deemed the arrest illegal. *Percival,* 70 S.C. at 74, 49 S.E. at 7. In *Loggins,* the Court held "by terms of the act" the conductor enjoyed the common law authority of constables to "arrest those whom [he] saw engaged in an affray or breach of the peace." [4] *Loggins,* 64 S.C. at 327–28, 42 S.E. at 165. If the conductor in *Loggins* had been authorized to arrest as a private person for a breach of the peace misdemeanor, the Court would not have had to rely on the statute.[5]

---

4. A later holding of the South Carolina Supreme Court reaffirms the notion all citizens do not enjoy the authority granted train conductors by the statute. *Pullman Co. v. Public Serv. Comm'n,* 238 S.C. 358, 363, 120 S.E.2d 214, 216 (1961) ("The police protection afforded passengers would be the same with a porter in charge as with a pullman conductor for neither have police powers as does the train conductor.").

5. According to the majority, the common law rule may not have been raised on appeal. They contend the Court did not need to address the

Other Code provisions provide evidence the Legislature has never intended to authorize citizens to arrest for breach of the peace misdemeanors. When our Legislature has wished to carve out a statutory rule regarding arrest for breach of the peace, it has done so explicitly. *See* S.C.Code Ann. § 14–1–140 (1977) (persons going to or from court are free from arrest except for treason, felony, or breach of the peace); S.C.Code Ann. § 17–13–60 (1985) (person engaged in or attending military duty not to be arrested except for treason, felony, or breach of the peace); S.C.Code Ann. § 23–17–90 (1989) (Sheriff or deputy arresting without writ, warrant or process liable for illegal arrest but nothing prevents from arresting for treason, felony, or breach of the peace committed in his presence).[6]

A well-reasoned South Carolina Attorney General's Opinion also concludes South Carolina law does not allow citizens to arrest for breach of the peace misdemeanors committed in their presence.[7] When Mayor Brooks of Andrews requested an opinion from the Attorney General on the validity of an arrest for disorderly conduct by one of his officers, the Attorney General responded:

---

rule because the statute was clear. Under their view, however, the statute declaring train conductors "conservators of the peace" and giving them "the common law power of constables to make arrests" would be wholly unnecessary, as all citizens would be "conservators of the peace." We should not presume the Legislature undertook a meaningless act. 73 Am.Jur.2d *Statutes* § 249 at 422 (1974) ("[T]he legislature is not to be presumed to have done a vain thing in the enactment of a statute."). The Legislature certainly would not have geographically restricted the authority of train conductors and depot agents if ordinary citizens enjoy such authority statewide.

6.  States intending to preserve the English common law rule of citizen's arrest for breach of the peace have done so explicitly. *See, e.g.,* Miss.Code Ann. § 99–3–7(1) (Supp.1997) ("An officer or private person may arrest any person ... for ... a breach of the peace...."); Ind. Code Ann. § 35–33–1–4(a) (1994) ("Any person may arrest any other person if: ... (3) a misdemeanor involving a breach of the peace is being committed in his presence...."); Tex.Code Crim.P.Ann. art. 14.01(a) (1997) (Peace officer or any other person may arrest without warrant when offense is committed in presence and is felony or offense against the public peace.).

7.  Incidentally, this Attorney General's Opinion was written by the author of the majority.

Here, the officer arrested an individual beyond the territorial boundaries of the Town of Andrews for a misdemeanor that was committed within the presence of the officer but outside the municipal limits. The offender had not been pursued·by the officer nor had he offered Right. As the policeman had no more authority outside the town limits than a private citizen, his action must be viewed as though he was acting in a private capacity. Because a private party could not lawfully arrest the person for the crime of disorderly conduct, which is a misdemeanor in South Carolina, it follows that the arrest by the police officer without a warrant was unlawful.

1964 Op.S.C. Att'y Gen. No. 1693 at 149.[8]

In summary, a review of our history and law reveals the legislative, judicial, and executive branches of South Carolina government have all operated under the belief neither our common law, nor our statutes, allow citizens to arrest for breach of the peace misdemeanors other than petit larceny. It is not for this Court to rewrite that history or our law.

Clear and ample South Carolina authority contravenes the English common law rule cited as dicta in *Nall*. *Anderson*, its progeny and their interpretation of the statute clearly control. *State ex rel. McLeod*, 284 S.C. at 496, 328 S.E.2d at 87 ("[T]he English common law ordinarily is presumed to govern if there is no South Carolina authority to the contrary."); S.C. Const. art. V, § 9 (The Court of Appeals is bound by decisions of the Supreme Court.). Because the *Anderson* rule only allows citizens to arrest when a felony has been committed, the common law of South Carolina did not authorize Thompson to arrest McAteer for driving under the influence, second offense, a class (c) misdemeanor. *Anderson*, 19 S.C.L. (1 Hill) at 341.

## DUI IS NOT A *PER SE* BREACH OF THE PEACE

Even if citizens have the authority to arrest for breach of the peace misdemeanors committed in their presence, we do

---

**8.** A second Attorney General's Opinion also reaches the same conclusion. "Since a private citizen cannot arrest for a misdemeanor even committed within his presence, neither can a municipal police officer who exceeds his corporate limits...." 1970 Op.S.C. Att'y Gen. No. 2845 at 77.

not believe driving under the influence constitutes a *per se* breach of the peace. Although we acknowledge violence does not actually have to occur for an act to constitute breach of the peace, the act must tend "with sufficient directness to breach the peace." *State v. Peer,* 320 S.C. 546, 552, 466 S.E.2d 375, 379 (Ct.App.1996) (quoting 12 Am.Jur.2d *Breach of the Peace* § 4 (1964)). As noted, the Court must examine the particular circumstances of each occurrence to make a determination whether the individual act is a breach of the peace. 12 Am.Jur.2d *Breach of the Peace* § 10 at 540 (1997) ("Not only the type of act or conduct, but also the particular circumstances of the occurrence, are taken into consideration in determining whether a breach of the peace has been committed.").

The majority cites only out-of-state law to support its assertion driving under the influence is a breach of the peace. Additionally, the circumstances in all but one of the cases it relies on are very different from those in this case.[9] The

9. In *State v. Hart,* 669 N.E.2d 762 (Ind.Ct.App.1996), the citizen "observed Hart's vehicle swerve in and out of traffic and, at one point, cross the center line into oncoming traffic." *Id.* at 763. Furthermore, "Hart's driving forced two or three other vehicles from their respective lanes of traffic, and his vehicle almost ran two stoplights." *Id.*

In *Romo v. State,* 577 S.W.2d 251 (Tex.Crim.App.1979), the defendant was "driving 'erratically' and at a high rate of speed." *Id.* at 252. His car "was weaving across the center lane and on to the shoulder of the road," and "passed in a way that forced [the officer's] car into the curb in order to avoid an accident." *Id.*

In *Edwards v. State,* 462 So.2d 581 (Fla.Dist.Ct.App.1985), the defendant crossed the center line three to seven times. The Court found "most important" the fact defendant's "erratic driving forced approaching vehicles to run onto the berm." *Id.* at 582. Finally, defendant "almost hit a bridge abutment before coming to a halt after being signalled [sic] to stop." *Id.* The Florida Court held his conduct "constituted a breach of the peace because it posed a threat to himself, other motorists, and pedestrians." *Id.* The Court noted it could think of no better example of breach of the peace than "a drunk driver at the wheel of a killing machine that is going all over the road and scaring oncoming drivers to death rather than killing them." *Id.* The Florida Fourth District Court of Appeals recently said of *Edwards,* "[W]e determined that the *erratic driving* observed by the officer was a breach of the peace...." *Steiner v. State,* 690 So.2d 706, 708 (Fla.Dist.Ct.App. 1997) (emphasis added).

In *City of Waukesha v. Gorz,* 166 Wis.2d 243, 479 N.W.2d 221 (Wis.Ct.App.1991), the officer "observed an automobile cross the center line several times." Even in *State v. Rue,* 72 N.M. 212, 382 P.2d 697

South Carolina Supreme Court has never held driving under the influence is a *per se* breach of the peace.

To the contrary, our Supreme Court declined an opportunity to hold actual reckless driving, which was threatening immediate harm to the public, constituted breach of the peace. *Jordan v. C & S Nat'l Bank of S.C.*, 278 S.C. 449, 298 S.E.2d 213 (1982). *Jordan* concerned the repossession of a truck. There was evidence the driver of the truck "exceeded the speed limit, failed to observe traffic signals and drove recklessly." *Id.* at 450, 298 S.E.2d at 214. The plaintiff in the case specifically charged such driving constituted breach of the peace. *Id.* The Supreme Court found it unnecessary to make a final determination of the issue, but commented, "We are not at all sure the alleged violations of the traffic laws amounted to a breach of the peace." *Id.* at 452, 298 S.E.2d at 214.

Generally, we agree with the Supreme Court's reluctance to declare violations of traffic laws breaches of the peace. More specifically, we do not believe McAteer breached the peace under the circumstances of this case, where he was on an isolated dirt road and slowly pulled about two hundred and fifty yards into a dirt driveway.

## POLICY IMPLICATIONS

Considering the policy implications of the majority opinion, the wisdom of the Founding Fathers' decision to place the policy-making function in the hands of the Legislature, and not the judiciary, becomes clear. While we fully recognize the dangers of driving under the influence, allowing untrained citizens to confront and arrest each other for violations of the traffic laws invites anarchy and potential tragedy. It is the majority who notes the attempted citizen's arrest in *Davis* ended with a "gun battle in the streets" and ultimately, the citizen's death. We would not add this additional danger to

(N.M.1963), the driver was charged with both driving while intoxicated and reckless driving, indicating his driving was erratic and dangerous.

Therefore, only in *State v. Jennings*, 112 Ohio App. 455, 176 N.E.2d 304 (Ohio Ct.App.1959), was there no indication before the Court of actual dangerous driving immediately threatening injury to the driver or others at the time of the arrest.

South Carolina's highways. The law enforcement officers of this state are highly trained professionals. Until now, South Carolina has wisely chosen to leave this difficult job to them.

It was apparent at oral argument the State was concerned about the prospect of roaming bands of citizens stopping each other for traffic offenses, but went on to say it pursued this case because this officer should have been permitted to make this arrest. Because Thompson was a trained, off-duty police officer, we agree the facts of this particular case seem unfair. However, it is not proper or wise for this Court to engage in a legislative expansion of citizen's arrest in order to avoid what we may see as an unfortunate result in one case. *Holman v. Bulldog Trucking Co.,* 311 S.C. 341, 348, 428 S.E.2d 889, 893 (Ct.App.1993) ("When the Legislature has enacted a rule embodying a particular policy choice, the courts have no power to annul the Legislature's judgment by substituting their own views of sound public policy.").

Other jurisdictions have discovered the merits of granting state-wide jurisdiction to all sworn police officers to address the concern the State expresses in this case. *See* N.Y.Crim. Proc.Law § 140.10(3) (1992) (amended 1996) ("A police officer may arrest a person for a crime ... whether or not such crime was committed within the geographical area of such police officer's employment, and he may make such arrest within the state, regardless of the situs of the commission of the crime."). Such a policy change would address concerns over seemingly unfair outcomes such as this one, yet avoid the dangers of expanded citizen's arrest power. This would be a matter for our Legislature and not the courts.

## CONCLUSION

Because we believe the law is plain and obvious citizens have no authority to arrest for breach of the peace misdemeanors committed in their presence, because we do not believe McAteer breached the peace in this case, and because we strongly disagree with the policy of allowing citizens to

arrest each other for traffic violations, we would reverse and remand for a new trial with instructions to suppress all evidence stemming from the illegal arrest.[10]

---

10. The State argued alternatively that the evidence should not be suppressed because Thompson's arrest of McAteer did not constitute state action. Thompson was in full uniform when he approached McAteer. But for the indicia of Thompson's office, McAteer would likely have ignored his instructions. McAteer's peaceful adherence to apparent police authority should not serve to rob him of Fourth and Fourteenth Amendment protection. *Cf. League v. National Surety Corp.,* 198 S.C. 289, 295–96, 17 S.E.2d 783, 785 (1941) (off-duty patrolman's appearance in official uniform carried assurance to public he was in discharge of his duties; respect for and obedience to officers should be maintained, not undermined, weakened or destroyed).